ROBERT R. MOORE (BAR NO. 113818)
MICHAEL S. GREGER (BAR NO. 156525)
WILLIAM W. HUCKINS (BAR NO. 201098)
JAMES A. TIMKO (BAR NO. 220140)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074
Phone: (415) 837-1515
Fax: (415) 837-1516
E-Mail: rmoore@allenmatkins.com
        mgreger@allenmatkins.com
        whuckins@allenmatkins.com
        jtimko@allenmatkins.com

Attorneys for Secured Creditor
Burlingame Capital Partners II, L.P.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>KIDS CONNECTION, INC.,<br><br>  Debtor. | Case No. 08-30026-DM<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY *EX PARTE* MOTION BY SECURED CREDITOR TO: (1) REQUIRE THE DEBTOR TO SEGREGATE AND ACCOUNT FOR CASH COLLATERAL; AND (2) TO CONDITION USE OF CASH COLLATERAL ON ADEQUATE PROTECTION OF SECURED CREDITOR'S LIENS**<br><br>[NO HEARING REQUIRED; LOCAL BANKRUPTCY RULE 9014-1(b)(1)(A)] |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF EMERGENCY EX PARTE MOTION BY
SECURED CREDITOR

Case: 08-30026   Doc# 15   Filed: 01/18/08   Entered: 01/18/08 17:26:48   Page 1 of 16

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | BACKGROUND | 2 |
| | A. Burlingame Was Awarded a Judgment of $4,739,738 Against the Debtor | 2 |
| | B. During the Trial, Ms. Koelling Admitted to Using the Debtor's Funds for Her Personal Expenses and to Not Reporting These Funds as Income in Her Own Personal Bankruptcy | 3 |
| | C. After the Debtor Filed for Bankruptcy Relief, Burlingame Informed the Debtor that It Did Not Consent to the Use of Cash Collateral | 8 |
| III. | DISCUSSION | 8 |
| | A. Under California Law, Burlingame Holds Liens Secured by All of the Debtor's Non-Exempt Personal Property | 8 |
| | B. The Bankruptcy Code Provides Broad Protections to a Secured Creditor's Interest in Cash Collateral | 9 |
| IV. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Hilde v. Zimmerman,
    120 F.3d 950 (9th Cir. 1997) ............................................................................................. 9

**Statutes**

11 U.S.C. § 361 .................................................................................................................... 11

11 U.S.C. § 363(c)(1) ........................................................................................................... 10

11 U.S.C. § 363(c)(2) ........................................................................................................... 10

11 U.S.C. § 363(c)(4) ........................................................................................................... 10

11 U.S.C. § 363(e) ................................................................................................................ 10

11 U.S.C. § 363(p)(1) ........................................................................................................... 10

Cal. Civ. Code § 663 .............................................................................................................. 9

Cal. Civ. Proc. Code § 697.310 .............................................................................................. 9

Cal. Civ. Proc. Code § 697.510 .............................................................................................. 9

Cal. Civ. Proc. Code § 697.530 .............................................................................................. 9

Cal. Civ. Proc. Code § 697.620 .............................................................................................. 9

Cal. Civ. Proc. Code § 697.910 .............................................................................................. 9

Cal. Civ. Proc. Code § 697.920 .............................................................................................. 9

Cal. Civ. Proc. Code § 708.110 .......................................................................................... 8, 9

**Rules**

Fed. R. Bankr. P. 4001(a)(2) ................................................................................................ 10

Local Bankruptcy Rule 1015-1(b) .......................................................................................... 2

Burlingame Capital Partners II, L.P. ("Burlingame") hereby files its Memorandum of Points and Authorities in support of Burlingame's Emergency *Ex Parte* Motion By Secured Creditor to: (1) Require the Debtor to Segregate and Account for Cash Collateral; and (2) to Condition Use of Cash Collateral on Adequate Protection of Secured Creditor's Liens (the "Motion"), as follows:

## I. PRELIMINARY STATEMENT

The Debtor's business consists of owning and running a private elementary and preschool. The Debtor's main assets are believed to be its interests in the real and personal property used in the operation of the school. Burlingame holds liens against substantially all of the Debtor's real and personal property, including any cash collateral that are proceeds of Burlingame's personal property liens. Since the filing of the Debtor's case over a week ago, the Debtor has not sought authorization from this Court to use cash collateral, or otherwise borrow unencumbered funds, in order to run its business operations. Instead, in response to Burlingame's counsel's request that the Debtor immediately sequester and account for any of Burlingame's cash collateral, the Debtor's counsel stated that not a single dime in cash collateral existed as of the petition date and no cash collateral is presently being used to operate the school. Given that Burlingame holds a blanket lien on all the Debtor's assets, and the Debtor has not sought authority to borrow any unencumbered funds to operate, the Debtor's position is dubious at best. Quite simply, Burlingame submits that it is impossible for no cash collateral to exist in the context of an ongoing operating business. Employees have to be paid, supplies have to be purchased. Precisely how does the Debtor operate without generating or spending any cash?

To make matters worse, prior to the Debtor's bankruptcy case, the 100% shareholder of the Debtor (Linda Koelling) admitted that she depleted hundreds of thousands of the Debtor's dollars to pay for her personal expenses. Among other things, she paid her children's wedding expenses, Direct TV for her house, and groceries. While the fact that Ms. Koelling would run her personal expenses through her corporation is perhaps not shocking, the fact that she ran such personal expenses through the corporation while she was a debtor in possession in her own personal

chapter 11 case pending before the Honorable Judge Leslie J. Tchaikovsky <u>without disclosing any such income in her operating statements</u> is problematic to say the least.[1]

In light of Ms. Koelling's admissions, and the Debtor's position that its operating business generates no cash collateral, Burlingame is in the untenable position of having its liens in the cash collateral potentially being diminished as the Debtor uses its cash collateral and has no choice but to file this Motion to force the Debtor to comply with the Bankruptcy Code and to condition the use of its cash collateral on the immediate adequate protection of its lien rights.

## II. BACKGROUND

### A. Burlingame Was Awarded a Judgment of $4,739,738 Against the Debtor

The Debtor operates an elementary and preschool and owns certain real property in Foster City, California. (Timko Decl. ¶ 3, Ex. 1 [341 Hearing Transcript], at 6:9-8:6, 24:14-24.). Burlingame was awarded a judgment against the Debtor in the amount of $4,739,738 (the "Judgment") following a jury trial held in the San Mateo Superior Court (Case No. CIV426631) (the "State Court Trial").[2] The Judgment was entered on October 2, 2007. (Timko Decl. ¶ 4, Ex. 2.) Shortly thereafter, on October 5, 2007, Burlingame filed a notice of judgment lien with the California Secretary of State (the "Notice of Judgment"). (Timko Decl. ¶ 5, Ex. 3.) In addition, shortly after obtaining the Judgment, Burlingame also obtained an order requiring the Debtor to appear for examination before the California Superior Court (the "Examination Order") and subsequently served the Examination Order on Ms. Koelling, (Timko Decl. ¶ 3, Ex. 1 [341 Hearing Transcript], at 6:9-8:6, 24:14-24); and ¶ 7, Ex. 5) on October 25, 2007. (Timko Decl. ¶ 6, Ex. 4.) Finally, Burlingame recorded an Abstract of Judgment with the San Mateo County Recorder on October 11, 2007 (the "Abstract of Judgment"). (Timko Decl. ¶ 8, Ex. 6.)

---

[1] Linda Koelling and her husband, Fred Koelling, filed bankruptcy before the United States Bankruptcy Court for the Northern District of California on November 16, 2004, which case is pending as Case No. 04-46443. Ms. Koelling caused this case to be filed after a judgment was entered against the Debtor in favor of Burlingame following a jury trial before the San Mateo Superior Court, Case No. 426631. The Debtor's counsel failed to file a Notice of Related Case on the petition date or thereafter in accordance with Local Bankruptcy Rule 1015-1(b).

[2] The jury verdict included a finding of malice and fraud against the Debtor in connection with the tortuous interference with contractual relations claim.

**B. During the Trial, Ms. Koelling Admitted to Using the Debtor's Funds for Her Personal Expenses and to Not Reporting These Funds as Income in Her Own Personal Bankruptcy**

As discussed above, Ms. Koelling and her husband are debtor's in a chapter 11 case pending before the Bankruptcy Court in the Northern District of California, Oakland Division (Case No. 04-46443) that was filed on November 16, 2004 (the "Koelling Bankruptcy Case"). (Timko Decl. ¶ 9, Ex. 7.) During the state court trial, Ms. Koelling testified extensively about expensing hundreds of thousands of dollars of personal items through the Debtor. (Timko Decl. ¶ 10, Ex. 8.) Further, Ms. Koelling also admitted that she did not include these funds as income in the operating reports filed under oath in the Koelling Bankruptcy Case. The following are excerpts from Ms. Koelling's testimony regarding her: (i) use of the Debtor's funds for personal expenses; and (ii) and her failure to report such income in her operating reports in the Koelling Bankruptcy Case.

**1. Testimony Regarding Use of Debtor's Funds for Personal Expenses**

DIRECT EXAMINATION BY MR. MOORE

(Defendants' Exhibit No. 443 Was Marked For Identification.)

BY MR. MOORE:

Q. Mrs. Koelling, I would like to show you what's been marked as Exhibit 443 and ask you if you have seen this before?

A. Yes, I have.

Q. Now, can you tell me -- this is a letter or a -- it looks like a letter that you wrote to a gentleman by the name of Greg, correct?

A. That is correct.

Q. And who is Greg?

A. Greg Carpenter.

Q. Yes.

A. Is a business brokerage individual.

Q. And when did you write this letter to Mr. Carpenter?

A. It was a couple of years ago.

| | |
|---|---|
| 1 | Q. And you write -- well, let me have this introduced into evidence. |
| 2 | THE COURT: Any objection? |
| 3 | MR. FREEMAN: No objections, Your Honor. |
| 4 | THE COURT: All right. . . . And it is received for the bench portion of the trial. |
| 5 | (Defendants' Exhibit No. 443 Was Admitted Into Evidence.) |

(Timko Decl., ¶ 12, Ex. 10 [Transcript from 7/20/07], 53:22-64:24.)

> Q. Now, Mrs. Koelling, you indicate here that you ran a number of your personal items through the corporation, correct?
>
> A. Correct.
>
> Q. And then below this, you have a list of those items that, in 2005, you expensed through Kids Connection?
>
> A. Correct.
>
> Q. And that was car payments, right?
>
> A. The car payments are what the company pays. The car is a company car.
>
> Q. So the company actually pays the car payments directly. This is a different car?
>
> A. No.
>
> Q. And that car you're driving is what?
>
> A. A Mercedes.
>
> Q. Yes. What model Mercedes?
>
> A. It's an S-430.
>
> Q. And the company also pays for the car insurance?
>
> A. Yes.
>
> Q. Car registration?
>
> A. Yes. Because it's -- yes. It's under the Kids Connection name.[3]
>
> Q. And all your groceries?

---

[3] During the Kids Connection judgment debtor's examination conducted on November 14, 2007, Koelling contradicted her trial testimony, claiming that the Mercedes S-430 was hers personally, not Kids Connection and that it was protected by the automatic stay. (See Timko Decl., ¶ 11, Ex. 9 [Kids Connection Judgment Debtor's Examination Transcript dated approx. November 14, 2007] at 27:22 – 28:15.) The Koellings' schedules did not disclose ownership of a Mercedes S-430. (Timko Decl., ¶ 9, Ex. 7)

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF EMERGENCY EX PARTE MOTION BY

Case 08-30026   Doc# 15   Filed: 01/18/08   Entered: 01/18/08 17:26:48   Page 7 of 16

-4-

1    A. No, not all of my groceries. Only some of the groceries, if I have the company credit card.

2    Q. Well, you say in here -- the letter, it says, "all groceries." Do you see that?

3    A. All groceries that are charged at the time that I go to the grocery store, and I'm using the company credit card.

4

5    Q. Then, pharmacy items?

6    A. Yes.

7    Q. The company pays -- it pays for the home alarm, right?

8    A. Yes.

9    Q. Home landscaping?

10    A. Yes.

11    Q. Direct TV for your house?

12    A. Yes.

13    Q. AOL accounts, personal accounts; is that right?

14    A. Yes, and business accounts.

15    Q. Cell phone service?

16    A. Yes.

17    Q. Subscriptions, club dues, correct?

18    A. Yeah. That's for me through -- for Kids Connection.

19    Q. And it pays for your health insurance?

20    A. Yes.

21    Q. Car maintenance?

22    A. Yes.

23    Q. And gas for your entire family?

24    A. No, not the entire family. That would be for me if I use the company credit card when we're driving.

25

26    Q. Then, you have your personal accounting fees and attorney's fees?

   A. Yes.

27

28    Q. In fact, you are paying for Mr. Sugarman to be employed in this case; is that correct?

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY EX PARTE MOTION BY SECURED CREDITOR

-5-

Case 08-30026    Doc# 15    Filed: 01/18/08    Entered: 01/18/08 17:26:48    Page 8 of 16

1      A. Yes.

2      Q. When I say, "you," that's Kids Connection?

3      A. Kids Connection was paying for it, yes.

4      Q. It says, "College fees, expenses, personal began 1994, ended 2005." What does that refer to?

5      A. When our sons were in college.

6      Q. So Kids Connection –

7      A. And daughter.

8      Q. Did Kids Connection pay for their college tuition and expenses?

9      A. It paid for their college tuition and books.

10      Q. It says your daughter's wedding in 2000?

11      A. Yes.

12      Q. Which cost $101,134.43; is that right?

13      A. The wedding?

14      Q. Yeah.

15      A. No. That was the total amount for the list of all of these items.

16      Q. I'm sorry. I misread that.

17      A. Please.

18      Q. If you go down a little further, it says in 2000, your daughter's wedding cost $100,000 alone, correct?

19

20      A. Close to it.

21      Q. That was paid for by the company?

22      A. A lot of it, yes.

23      Q. Now, this is a list item for 2005. Would you have a similar list item for 2004?

24      A. The list would be similar. . . .

25 (Timko Decl. ¶ 12, Ex. 10 [Transcript from 7/20/07], 57:8-60:15.)

26      Q. What are the personal expenses that Kids Connection has paid for you in 2006? Can you tell me?

27

28      A. In 2006, it would have paid for the car insurance, the car registration, because the car is registered to Kids Connection, not me. The alarm service, the

landscaping, the Direct TV. There are no more subscriptions. Club dues, which is the Lion's Club, which I belong to, health insurance. Did I say that? Personal accounting fees. There's no more college. There's no more wedding. And entertainment.

Q. Now, is there anything that's not on this list that Kids Connection pays directly to you?

A. That pays for me directly?

Q. Yes.

A. I think I've listed pretty much everything on here.

(Timko Decl., ¶ 12, Ex. 10 [Transcript from 7/20/07], 60:22-61:11.)

### 2. Testimony Regarding the Failure to Report Income in the Koelling Bankruptcy Case

Q. Have you ever indicated on the M.O.R.'s that you filed with the Bankruptcy Court under penalty of perjury that in the year 2005, you personally received $101,134 from Kids Connection to pay for personal expenses?

A. Well, no.

Q. You haven't?

A. I have put on the bankruptcy M.O.R.'s exactly what I make each month on my salary statement, my check statement.

Q. I'm sorry. I didn't mean to interrupt.

A. That's okay.

Q. Did you put on the M.O.R.'s with the Bankruptcy Court in the year 2005, is there anything reflected that you personally received benefits of payments in the amount of over $101,000 from Kids Connection?

A. No. That's not on there.

(Timko Decl. ¶ 12, Ex. 10 [Transcript from 7/20/07], at 62:10-25) (emphasis added).

Notably, on examination by Koelling's own attorney, Ms. Koelling claimed that the hundreds of thousands of dollars of personal items expensed through Kids Connection were treated as income to the Koellings for tax purposes, on which they allegedly paid taxes. (Timko Decl. ¶ 12, Ex. 10 [Transcript from 7/20/07], at 66:22-67:23, 69:16-70:1.) Nevertheless, Ms. Koelling failed to disclose the hundred of thousands of dollars of income she received from

the payment of these personal items in the Monthly Operating Reports she filed with the Bankruptcy Court.

### C. After the Debtor Filed for Bankruptcy Relief, Burlingame Informed the Debtor that It Did Not Consent to the Use of Cash Collateral

On January 9, 2008, the Debtor filed its bankruptcy petition. On January 16, 2008, Burlingame's counsel sent to the Debtor's counsel a letter by facsimile and mail, informing them that Burlingame held liens in all of the Debtor's real and personal property, including any and all of the Debtor's cash collateral, and that Burlingame did not consent to the Debtor's continued use of cash collateral (the "Adequate Protection Letter"). In the Adequate Protection Letter, Burlingame requested the Debtor's counsel to contact Burlingame's counsel to discuss the continued use of cash collateral. (Greger Decl. ¶ 3, Ex. A.) On January 17, 2007, Burlingame's counsel telephoned the Debtor's counsel and left a voicemail requesting that Debtor's counsel return his call to discuss this matter. (Greger Decl. ¶ 3.) On January 18, 2007, counsel for Burlingame received a letter from counsel for the Debtor. In the letter counsel stated that no cash collateral existed. (Greger Decl. ¶ 4.). In response to the letter, counsel for Burlingame immediately telephoned the Debtor's counsel. During such conversation, the Debtor's counsel reiterated its position that no cash existed that Burlingame had a lien in and that no such cash was being collected or spent by the Debtor postpetition.

## III. DISCUSSION

### A. Under California Law, Burlingame Holds Liens Secured by All of the Debtor's Non-Exempt Personal Property

Under California law, Burlingame holds the following liens against the Debtor's real and personal property:

First, pursuant to California Code of Civil Procedure section 708.110, the service of the Examination Order created a lien on all of the Debtor's personal property (the "ORAP Lien"). Section 708.110 states in pertinent part:

> (a) The judgment creditor may apply to the proper court for an order requiring the judgment debtor to appear before the court, or before a referee appointed by the court, at a time and place specified in the order, to furnish information to aid in enforcement of the money judgment.

* * *

> (d) The judgment creditor shall personally serve a copy of the order on the judgment debtor not less than 10 days before the date of examination. . . . Service of the order creates a lien on the personal property of the judgment debtor for a period of one year from the date of the order unless extended or sooner terminated by the court.

Cal. Civ. Proc. Code § 708.110.

Liens created under section 708.110 are created by the California legislature to assist judgment debtors in collecting on their judgments. California law does not require that any steps be taken in order to perfect these liens, and these liens survive even after the personal property originally subject to the ORAP lien is transferred. See Cal. Civ. Proc. §§ 708.110, 697.910, and 697.920; and Hilde v. Zimmerman, 120 F.3d 950, 954 (9th Cir. 1997). In addition, California law defines "personal property" as "[e]very kind of property that is not real . . . ." Cal. Civ. Code § 663. Thus, the ORAP Lien imposes a lien against all of the Debtor's personal property, including any cash collateral.

Second, by recording the judgment with the California Secretary of State, a judgment lien was created in all of the Debtor's: (i) accounts receivable, (ii) chattel paper, (iii) equipment, (iv) farm products; (v) inventory, and (vi) negotiable documents of title held by the Debtor (the "Secretary of State Lien"). Cal. Civ. Proc. Code §§ 697.510 and 697.530. In addition, pursuant to California Code of Civil Procedure section 697.620 Burlingame's judgment lien on all personal property, automatically attached to all cash proceeds of the Debtor's personal property. Cal. Civ. Proc. Code § 697.620.

Third, Burlingame's recorded Abstract of Judgment created a judgment lien on the Debtor's real property (the "Judgment Lien" and collectively, along with the ORAP Lien and Secretary of State Lien, the "Liens"). Cal. Civ. Proc. Code § 697.310.

### B. The Bankruptcy Code Provides Broad Protections to a Secured Creditor's Interest in Cash Collateral

By this Motion, Burlingame seeks to condition the Debtor's continued use of Burlingame's cash collateral on adequate protection of Burlingame's secured interest in the Debtor's cash collateral. The Bankruptcy Code provides significant protections to a secured creditor's interest in

cash collateral. For example, section 363(c)(4) requires a Debtor to "segregate and account for any cash collateral in the trustee's possession, custody, or control." 11 U.S.C. § 363(c)(4). Further, while section 363(c)(1) allows a debtor to use property of the estate in the ordinary course of business, section 363(c)(2) limits the instances that a debtor may use cash collateral:

> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code further protects a secured creditor's interests by authorizing a secured creditor to seek adequate protection of its secured interests in any and all of the debtor's property in which the creditor has an interest – <u>with or without</u> a hearing:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used sold, or leased, or proposed to be used, sold or leased, by the trustee, the court with or without a hearing, <u>shall prohibit</u> or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e) (emphasis added). The Federal Rules of Bankruptcy Procedure further provide that a motion under section 363(e) can be granted:

> <u>without prior notice</u> only if (A) it clearly appears from the specific facts by affidavit or verified motion that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party or attorney for the can be heard in opposition, and (B) the movant's attorney certifies to the court in writing the efforts if any, which have been made to give notice for the reasons why notice should not be required.

Fed. R. Bankr. P. 4001(a)(2) (emphasis added).[4]

Burlingame does <u>not</u> consent to the Debtor's continued use of cash collateral. Thus, the circumstances surrounding this case require the immediate approval of the Motion. As of this time, the Debtor has not: (1) filed a motion seeking approval of the use of Burlingame's cash collateral, or (2) provided any evidence of segregation or accounting of the cash collateral in the

---

[4] If an adequate protection hearing does occur under section 363, the burden of proof to show an interest of a secured creditor is adequately protected is placed squarely on the debtor. See 11 U.S.C. § 363(p)(1).

Debtor's possession, custody, or control.[5] The Debtor's failure to take these actions violates the Bankruptcy Code's requirements. Presumably, the Debtor continues to operate its business. In such operations, the Debtor presumably both generates and spends cash. Given that Burlingame holds a blanks lien on all the Debtor's assets, it is difficult to understand the Debtor's contention that no cash collateral exits or is being spent. Given the foregoing, every day the Debtor uses cash without a bankruptcy court order, Burlingame suffers risk of the immediate and irreparable harm to its security interests.

Further, because of Ms. Koelling's admitted use of hundreds of thousands of dollars of the Debtor's funds for her own personal benefit prior to the bankruptcy and her admitted failure to report the income in the monthly operating reports in the Koelling Bankruptcy Case, Burlingame has very serious concerns that its cash collateral may be dissipated by Ms. Koelling. Thus, it is imperative that the Court issue an Order requiring that the Debtor to immediately segregate and account for Burlingame's cash collateral and condition any further use of cash collateral on the following minimum terms:[6]

- The Debtor will be expressly prohibited from using any of Burlingame's cash collateral, without further order of the Court. If the Debtor seeks to use any cash collateral, the Debtor will be required to submit a detailed budget to this Court and Burlingame and request a hearing for approval of said budget. The Debtor will also be required to immediately notice Burlingame's above captioned counsel of any such hearing by email.

- The Debtor shall establish a segregated account at a depository institution approved by the Office of the United States Trustee and shall immediately provide Burlingame with the bank name, branch and account number of the segregated account (the "Cash Collateral Account"). The Debtor shall immediately deposit all cash collateral currently in its possession, custody and control in the Cash Collateral Account, and on a going forward basis, the Debtor is required to deposit all future cash collateral that comes into its possession, custody, or control into the Cash Collateral Account.

- Debtor shall not commingle any cash collateral to which Burlingame has an interest with any other non-cash collateral funds or money from other sources, if any.

---

[5] Indeed, as of the date of this Motion, the Debtor has also failed to file its Schedules and Statement of Financial Affairs.

[6] In proposing these terms, Burlingame has reviewed the Northern District of California's Guidelines regarding cash collateral orders, as well as, section 361 of the Bankruptcy Code. Burlingame believes that the proposed terms fully comply with the Guidelines and the Bankruptcy Code.

-11-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY EX PARTE MOTION BY SECURED CREDITOR

- Unless included in a Court approved budget, payments to any insiders or affiliates are strictly prohibited and insiders and affiliates of the Debtor are barred from using any funds of the Debtor unless otherwise approved by the Court.

- The Debtor shall be required to provide Burlingame with detailed monthly accountings of all revenue and expenditures on or before the (15th) day of the month following the receipt of such revenue or expenditures.

- The Debtor shall give Burlingame access to all of the Debtor's books and records immediately upon request.

- Burlingame shall be granted, a fully perfected replacement lien and security interest in all property of the Debtor's bankruptcy estate (the "Replacement Lien"). The Replacement Lien shall secure the full amount of the Judgment and shall be in an amount equal to: (i) on a dollar for dollar basis, the aggregate amount of cash collateral used or spent by the Debtor during its chapter 11 bankruptcy case; plus, (ii) an amount equal to the diminution in value of any of Burlingame's collateral during the pendency of the Debtor's bankruptcy case. The Replacement Lien granted by the Court's Order granting the Motion shall be immediately valid, enforceable and fully perfected without any further action by Burlingame, and no filing or recordation or any other act in accordance with any applicable local, state or federal law is necessary to create or perfect such lien and security interest.

- The Debtor's right to use cash collateral subject to Burlingame's Liens will immediately terminate upon any breach of any of the terms of an order permitting any use of cash collateral.

While Burlingame believes that cause exists to enter the requested relief on an *ex parte* basis, should the Court not be inclined to grant the above requested relief on an *ex parte* basis, Burlingame requests the Court to enter an order requiring the Debtor to immediately segregate and account for Burlingame's cash collateral, provide evidence of such segregation, and immediately cease and desist from using any of Burlingame's cash collateral until a hearing may be set by this Court at its earliest convenience.

//
//
//
//
//

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY EX PARTE MOTION BY SECURED CREDITOR

-12-

Case: 08-30026   Doc# 15   Filed: 01/18/08   Entered: 01/18/08 17:26:48   Page 15 of 16

## IV. CONCLUSION

For all of the foregoing reasons, the relief requested in the Motion should be granted.

Dated: January 18, 2008

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Michael S. Greger*
MICHAEL S. GREGER
Attorneys for Secured Creditor
Burlingame Capital Partners II, L.P.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF EMERGENCY EX PARTE MOTION BY
SECURED CREDITOR

-13-

Case: 08-30026　Doc# 15　Filed: 01/18/08　Entered: 01/18/08 17:26:48　Page 16 of 16