UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE DENNIS MONTALI, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 08-30026-11 |
| | ) |
| KIDS CONNECTION, INC., | ) |
| | ) |
| Debtor. | ) Friday, May 8, 2009 |
| | ) San Francisco, California |

1.  First application for interim compensation and reimbursement of expenses by counsel for debtor;
2.  Examiner's first interim application for compensation and reimbursement of expenses;
3.  Further status conference.

Appearances:

| | |
|---|---|
| For the Debtor: | Scott L. Goodsell, Esq.<br>Campeau Goodsell & Smith<br>44 North First Street, Suite 100<br>San Jose, California  95112 |
| For Burlingame Capital<br>Partners, II: | William W. Huckins, Esq.<br>Michael S. Greger, Esq.<br>Allen Matkins Leck Gamble & Mallory<br>Three Embarcadero Center, 12th Floor<br>San Francisco, California  94111-4074 |
| For the Examiner<br>(via telephone): | Michael A. Isaacs, Esq.<br>Luce, Forward, Hamilton & Scripps<br>121 Spear Street, Suite 200<br>San Francisco, California  94105 |
| From the United<br>States Trustee<br>(via telephone): | Patricia A. Cutler, Trial Attorney<br>United States Department of Justice<br>Office of the United States Trustee<br>235 Pine Street, Suite 700<br>San Francisco, California  94104 |
| Digital Court<br>Recorder: | United States Bankruptcy Court<br>Joneita Hammonds<br>235 Pine Street, 22nd Floor (94104)<br>Post Office Box 7341<br>San Francisco, California  94120-7341<br>(415) 268-2387 |
| Certified Electronic<br>Transcriber: | Palmer Reporting Services<br>1948 Diamond Oak Way<br>Manteca, California  95336-9124 |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 1 of 39

1   Friday, May 8, 2009                              9:30 o'clock a.m.

2              P R O C E E D I N G S

3        THE CLERK:  All rise.  Court is now in session.  The

4   Honorable Dennis Montali presiding.

5        THE COURT:  Good morning.  Please be seated.

6        [COUNSEL]:  Good morning, Your Honor.

7        THE CLERK:  Matter of Kids Connection, Inc.

8        THE COURT:  Appearances?

9        MR. GOODSELL:  Scott Goodsell for the debtor.

10       MR. HUCKINS:  Good morning, Your Honor.  Bill Huckins

11   and Mike Greger on behalf of Burlingame Capital.

12       THE COURT:  Good morning.

13       On the phone?

14       MR. ISAACS:  Good morning, Your Honor.  Michael Isaacs

15   on behalf of David Bradlow, the Examiner.

16       THE COURT:  Good morning.

17       MS. CUTLER:  Patricia Cutler for U.S. Trustee.

18       THE COURT:  All right.  What's the story on Mr.

19   Bradlow, any change?

20       MR. HUCKINS:  No, Your Honor.

21       MR. ISAACS:  Your Honor, we have heard nothing more

22   from the Judsons or from Burlingame.  So I am assuming matters —

23   the fee application is going forward and that the order

24   discharging Mr. Bradlow will be uploaded this morning.

25       THE COURT:  Okay.

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 2 of 39

1        MR. ISAACS:  Unless —

2        THE COURT:  Okay.  Well, you can —

3        MR. ISAACS:  — Mr. Huckins has something to report.

4        THE COURT:  — go ahead and upload that order.

5        I'm sorry.  Say again?  That was —

6        MR. ISAACS:  I said unless Mr. Huckins has something

7   else to report, but I have not heard anything from him since the

8   hearing on Wednesday.

9        THE COURT:  Well, he just said nothing to report.

10       MR. HUCKINS:  Correct.

11       THE COURT:  Nothing to report.  He acknowledged that.

12       So on Mr. Bradlow's status, Mr. Isaacs, you can upload

13   that order and I'll — have you served it on opposing counsel?

14       MR. ISAACS:  I sent them a copy of it, I think, either

15   late yesterday or early this morning, —

16       THE COURT:  Well, I assume it —

17       MR. ISAACS:  — Your Honor.  It's pretty benign.  It

18   just says he's discharged.

19       THE COURT:  Yeah.  I assume it's very simple.  Okay.

20   Upload the order.

21       Now on the subject of the fee applications, let me

22   break into two parts the question of allowance fees, both for

23   Mr. Bradlow and Mr. Isaacs on the one hand and Mr. Goodsell and

24   his firm on the other.  The allowance of fees and the payment of

25   fees.  So I will allow Mr. Bradlow's fees and that includes Mr.

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 3 of 39

1 Isaacs' firm's fees.  Now —

2          MR. ISAACS:  Thank you, Your Honor.

3          THE COURT:  — I will come back in a moment to talk

4 about payment.

5          On the subject of Mr. Goodsell's fees — well, let's

6 talk about payment for a minute.

7          Mr. Goodsell, your reply to the Burlingame objections

8 includes an unauthenticated cashflow projection.  And I'm trying

9 to compare that with the report that Mr. Bradlow submitted.  And

10 I frankly don't really know how to resolve it.

11          And so, again, leaving aside for the moment

12 Burlingame's objections to any cash being expended for the

13 reasons articulated in its papers, how — if I were to authorize

14 some, how would I know what to do?

15          MR. GOODSELL:  Well, the cashflow projections that we

16 provided are the result of the debtor's information to us.  It

17 was in the form of an email and information got wrapped around.

18 So we simply put it into a schedule.  It's the same information

19 that was provided to Mr. Bradlow.

20          THE COURT:  I know.

21          MR. GOODSELL:  And the numbers are actually the same.

22          THE COURT:  They are the same.  I know.

23          MR. GOODSELL:  Yes.

24          THE COURT:  That's what's — that's why I'm a little

25 confused.

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 4 of 39

1          MR. GOODSELL:  Well, because the information was

2    provided to Mr. Bradlow.  He put together a foreshortened

3    version.  I was not aware that he was going to be filing this

4    report.  And so I have simply attached the more expansive

5    version with a little bit of additional information to my —

6          THE COURT:  Right, with the details.  But —

7          MR. GOODSELL:  Right.

8          THE COURT:  But Mr. Bradlow says in his report that if

9    the Court authorizes, a round number, $60,000, there'll be no

10   cash left at the end of July.  Your statement, I guess, is — I

11   guess we get to the same —

12         MR. GOODSELL:  Yes.

13         THE COURT:  — point, because you've got that 59,585 in

14   the right-hand column.  Well, then, what would you think I

15   should do if I'm going to authorize any payment?

16         MR. GOODSELL:  Well, I think that the Court can

17   certainly authorize conditional payment.  If the Court concludes

18   that the cash in the debtor's hands should be used to pay the

19   expenses of the professionals, then I think all the Court needs

20   to do is say:  If this sale closes before the end of July, then

21   the debtor can distribute the sum of — whatever it is — $60,000.

22   If it —

23         THE COURT:  Well, suppose it's July 30th, and

24   everything suggests that tomorrow the sale is going to close.

25   Does this mean $60,000 is distributed and Burlingame closes the

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 5 of
39

1  sale with nothing in the bank?

2      MR. GOODSELL:  That would be correct.

3      THE COURT:  And, conversely, if I say today it's okay

4  to pay $60,000, that doesn't really answer the question of

5  what's going to be on hand at the closing, A, because we don't

6  know when the closing is and, B, who knows what happens next.

7      MR. GOODSELL:  Well, and that's why I said it's — the

8  Court could certainly issue a conditional order that if it

9  closes before July 31st the sum of $60,000 can be distributed.

10  If it closes before the end of June it would be 165,-.

11      THE COURT:  But again I — but —

12      MR. GOODSELL:  I don't think there's any chance it's

13  going to close before the end of May.

14      THE COURT:  But I guess what I'm having trouble with

15  is you and Mr. Bradlow, for your own interests, would like to

16  get paid Monday.

17      MR. GOODSELL:  If possible.

18      THE COURT:  And so, again, let's — I know that your

19  fees are under a challenge.  But let's assume at the minimum I

20  said Mr. Bradlow's fees can be paid.  Who makes the decision on

21  how much should be paid next Monday?  In other words, does the

22  account get stripped?

23      In other words, every dollar that I allow out of the

24  account next Monday is a dollar less at the end of July, anyway.

25  It's just a matter of timing.

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 6 of 39

1          MR. GOODSELL:  That's true.

2          THE COURT:  So —

3          MR. GOODSELL:  I would think, Your Honor, that this is

4   a place where Mr. Bradlow were still acting as Examiner, and

5   we'd let him make that call.  And in his absence you're going to

6   have to let the debtor make that call.

7          THE COURT:  Well, absent — absent —

8          MR. GOODSELL:  I don't think the debtor is even going

9   to pay our fees, despite our demand, if the debtor doesn't think

10  that there's going to be money to keep the operation going.  The

11  debtor is not persuaded at this moment that this transaction

12  will close.  And the last thing —

13         THE COURT:  No, I understand that.  Them I mean, I

14  can't ignore the interplay of:  Is it going to close, isn't it

15  going to close?  Does my decision impact that ultimate decision?

16  And, again, it may.

17         From Burlingame's point of view, Burlingame made it

18  clear what it believes, it's in its belief, if payments are

19  made.

20         My point is that I'm assuming that you and Mr. Bradlow

21  want to be paid sooner rather than later.  And even

22  acknowledging Burlingame's extensive objections to your fees,

23  they never said no fees.  And even the other day Mr. Huckins

24  conceded some fees would obviously be appropriate.

25         So my dilemma is:  Well, why would I condition the

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 7 of
39

1   payment of fees on the imminent close?  And the answer is, I

2   guess, the answer is I shouldn't, that it's just — you're just

3   telling me what the outcomes may be.

4            MR. GOODSELL:  Right.

5            THE COURT:  Okay.  Anyone else want to be heard on

6   this question?  Mr. Huckins, I'll come back to your objections

7   to the fees in a moment, but —

8            MR. HUCKINS:  I guess I would ask the Court:  At this

9   juncture is the Court inclined to allow any payments from the

10  estate?  If the answer is no, then I'm not sure I need to

11  respond further.

12           THE COURT:  Well, sure.  Am I —

13           MR. HUCKINS:  If the Court is the least bit persuaded

14  that there may be cash available to pay — allow professional

15  fees, then I need to highlight some things to the Court, because

16  there are a number of matters that I don't think were either

17  developed properly.

18           And I think there is a significant issue that is left

19  unaddressed by both the debtor's projected cash flow, as well as

20  — Mr. Bradlow alludes to it, but —

21           THE COURT:  Mr. Bradlow, what?

22           MR. HUCKINS:  Mr. Bradlow's report alludes to it.  I

23  mean, in a nutshell, Mr. Bradlow said that there is inadequate —

24  inadequate working capital and there will be no cash available.

25  If you deplete the estate of $60,000, there will be no cash at

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 8 of
39

1   that point, none, zero.

2          THE COURT:  Well, the — and the projections are

3   consistent with that, —

4          MR. HUCKINS:  Correct.

5          THE COURT:  — right?  Yeah.  Well, I mean, look, you

6   can, if you want on Mr. Bradlow's editorializing.  And I don't

7   blame Mr. Bradlow for editorializing, but I didn't need the

8   editorializing.  I can look at the cash flow and reach the same

9   conclusion.

10         And Mr. Bradlow's opinion about the buyers making

11  adequate provisions of working capital is sort of irrelevant to

12  the issue.

13         MR. HUCKINS:  It is.

14         THE COURT:  So you don't — I don't think you need to

15  respond to that.  If you feel your clients need to have their

16  position vindicated, I guess I'll make him make a statement —

17  let you make a statement.  But I'd rather get to the merits of

18  today's motion.

19         So why don't you go ahead and assume that I'm in — I

20  mean, here's the problem.  You — I can't tell whether you really

21  are objecting to Mr. Bradlow being paid anything, or not.

22         MR. HUCKINS:  Well, Your Honor, let me — then I do

23  need to respond to the cash that may or may not be available.

24         Mr. Bradlow has said that there will not be any cash.

25  The Court's aware of that, based upon the projections.

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 9 of
39

1       I will comment at the outset that you're correct.
2   There's no foundation for any of the submissions that have been
3   made by either debtor's counsel or Mr. Bradlow.

4       More importantly, Burlingame has not been given an
5   opportunity to review or get that information.  We discussed
6   that the other day in Court.

7       So with that backdrop, but assuming this information
8   is what it is, there is no available cash to pay for — allow
9   professional fees from the debtor's operating accounts.  And I
10  would highlight a few things.

11      And I think one of the points, probably the most
12  important point to make, is — and it's highlighted by the letter
13  submissions by the teachers — that the teachers of the school
14  are paid on a 12-month basis, but their salaries are earned on a
15  10-month basis.

16      THE COURT:  Yes, I understand.

17      MR. HUCKINS:  Okay.  If you look at the salaries that
18  need to be paid in August, basically there are about $150,000 of
19  salaries that were paid in 2008.  And presumably that was for
20  salaries that were earned through June.  So essentially you've
21  got deferred salary obligations that will be due and payable in
22  August for services rendered previously.  So what —

23      THE COURT:  Is that on the spreadsheet?  Is that the
24  figure on the spreadsheet that you're referring —

25      MR. HUCKINS:  There is nothing in the spreadsheet for

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 10 of
39

1   August, as Mr. Bradlow alludes to.  If you look at our papers, I

2   think you need to — what you need to do is you need to look at

3   our papers, and it's on page 19.

4            THE COURT:  Okay.

5            MR. HUCKINS:  If you go to page 19 of our papers, the

6   August — and I'm using this as a proxy — the August 2008

7   teachers' salaries were $148,000.

8            THE COURT:  Oh, okay.  It's — that's last year's?

9            MR. HUCKINS:  That's last year's.  Presumably it is —

10  I think even reflected on the existing projections they're going

11  to be higher.  So —

12           MR. GOODSELL:  No, nobody's salaries have changed.

13           THE COURT:  Well, look, it will be a figure that —

14           MR. HUCKINS:  That is substantially —

15           THE COURT:  — that represents prior earnings.

16           MR. HUCKINS:  Prior earnings that's far in excess of

17  any residual cash that may be available.  So there really is no

18  available cash to pay for nonordinary-course expenses.

19           Your Honor, I would also direct the Court to Section

20  5.5C of the Asset Purchase Agreement.  And 5.5C of the Asset

21  Purchase Agreement obligates the debtor, prior to closing, to

22  pay all of the earned salary, wages, and benefits as of the

23  closing date.  If that is done, there will be no cash in the

24  accounts as is a practical matter.  Now —

25           THE COURT:  Well, let me ask you about that.  There

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 11 of
39

1   was an interesting point made in your objections to the

2   attorneys' fees.

3           MR. HUCKINS:  Um-hum.

4           THE COURT:  You're saying — in addition to your

5   reliance on contractual provisions, you're saying that somehow

6   that will distort the so-called equal treatment of creditors in

7   the same class.

8           MR. HUCKINS:  Um-hum.

9           THE COURT:  But doesn't paying the teachers' salaries

10  do exactly that in opposition to the rights of the

11  professionals?  I mean, how can I take the argument on one hand

12  and ignore it on the other hand?

13          MR. HUCKINS:  Your Honor, one is an ordinary-course

14  expense and the others are nonordinary-course expenses.

15          THE COURT:  But that's not the point.  That's not the

16  point you made.  You made the point about treating the

17  administrative claimants equally.

18          MR. HUCKINS:  I am just highlighting the fact that

19  whatever cash that may be there is for accrued and earned unpaid

20  salaries and wages for teachers rendering services in the

21  ordinary course.

22          THE COURT:  Okay.  But then we're back to the question

23  of ordinary course.  So —

24          MR. HUCKINS:  Well, —

25          THE COURT:  — what you want me to believe is that when

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 12 of
39

1   your clients entered into — client, singular — entered into this

2   agreement it was contractually closing the door for any payment

3   of any professional fees.

4           MR. HUCKINS:  Your Honor, —

5           THE COURT:  And that includes like the surveyor,

6   right?  The surveyor isn't ordinary course.  Does the surveyor

7   get paid?

8           MR. HUCKINS:  The surveyor was an obligation assumed

9   by the debtor as part of this transaction.

10          THE COURT:  Is the surveyor an ordinary-course event?

11          MR. HUCKINS:  Not necessarily.

12          THE COURT:  Not necessarily.  So —

13          MR. HUCKINS:  Correct.

14          THE COURT:  — what you're doing is singling out one

15  law firm.  And you're being a little equivocal about the

16  Examiner.  You know, your client was prepared to support the

17  Examiner as long as he opposed Goodsell's fees, but that's

18  history.  That's why the Examiner retired — or resigned.

19          But you're saying:  We got teachers, and surveyors,

20  and lawyers.  And we have this rule of equality among the class,

21  except not for the lawyers.

22          MR. HUCKINS:  Well, but we also get back to what

23  allowed professional fees are.  Let me highlight another thing,

24  Your Honor, because I think you need to understand — and we've

25  framed it as the precarious working-capital position the debtor

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 13 of 39

1    is in.  And I think this needs to be highlighted, as well.  If

2    you look at — again, going back to page 19.

3              THE COURT:  I'm sorry.  What page?

4              MR. HUCKINS:  Page 19 of our —

5              THE COURT:  Okay.  The same sheet that I was on?

6              MR. HUCKINS:  Yeah.  And then if you look at the

7    debtor's budgetary submission.  And this is highlighted in Mr.

8    Bradlow's, as well.  As of the end of April —

9              THE COURT:  Wait, you're going too fast for me.  You

10   want me — here, I'm looking — you're 19 and Mr. Bradlow is one

11   page?

12             MR. HUCKINS:  Yeah, go ahead, look at Mr. Bradlow's.

13   That's probably the easiest way to do it.

14             THE COURT:  Yeah, okay.  I'm with you.

15             MR. HUCKINS:  The opening cash balance as of May 1,

16   2009, *i.e.*, the end of April 2009 is $265,000.

17             THE COURT:  I'm sorry.  I'm not — oh, oh, I'm at the

18   closing cash balance at the end of May.

19             MR. HUCKINS:  Okay.  Now closing cash balance at the

20   end of April is 265,-.

21             THE COURT:  All right.  But I don't have a — what am I

22   supposed to look at to see that?

23             MR. HUCKINS:  Well, Mr. Bradlow's schedule.  Look at

24   the opening and then the closing.

25             THE COURT:  Oh, I'm sorry.  Excuse me.  I beg your

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 14 of
39

1    pardon.  I was looking at the wrong one.  Okay.

2            MR. HUCKINS:  Okay.  If you go back to April of 2008

3    in our schedule, —

4            THE COURT:  Um-hum.

5            MR. HUCKINS:  — the cash at the same point in time was

6    a hundred thousand dollars higher.

7            THE COURT:  Okay.

8            MR. HUCKINS:  Your Honor, I would submit that there

9    are, just based upon what is in the monthly operating reports,

10   as well as what's been submitted, that there's less cash now

11   than there was in 2008.

12           The highlight I make is if I go to August of 2008, the

13   end of the month, basically a hundred thousand dollars down in

14   cash at the end of August.  There was only $88,000 last year.

15           MR. GOODSELL:  Your Honor, I can't explain that.

16           MR. HUCKINS:  There —

17           THE COURT:  Well, just a minute.  I'll come back to

18   you.

19           MR. HUCKINS:  There is no cash.  It would be imprudent

20   to allow any cash to be distributed from this estate, other than

21   paying ordinary-course expenses.

22           THE COURT:  But, again, you want me to take regular —

23   the lawyers in Chapter 11 and say that's not ordinary, because

24   this company wasn't in bankruptcy when the agreement was

25   executed, which is called false.  It was in bankruptcy.  And —

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 15 of
39

1          MR. HUCKINS:  I don't think that's what we said, Your

2    Honor.

3          THE COURT:  — and — what?

4          MR. HUCKINS:  I don't think that's what we said.

5          THE COURT:  Well, that's the net result.  You're

6    saying the entire legal needs of Kids Connection postpetition —

7    or postagreement is not ordinary.  And you're saying yet other

8    things that are related to the sale, like a surveyor, is

9    ordinary, when it isn't.

10          And we all can agree, without debate, teachers'

11    salaries, of course, are ordinary.  There's no debate about

12    that.  And, you know, I don't know how — I guess what I'm

13    saying, Mr. Huckins, is Mr. Bradlow, Mr. Goodsell, you, I, your

14    clients, everybody thinks the teachers should be paid.  You just

15    say the lawyers shouldn't be paid.

16          MR. HUCKINS:  Your Honor, what —

17          THE COURT:  And you're being inconsistent, in my

18    judgment.

19          MR. HUCKINS:  I — perhaps we need to clarify

20    something.  Our pleading that was filed with the Court was an

21    objection to debtor's counsel's fee application and a statement

22    broadly about the availability and the permissibility of the

23    payment of any allowed professional fees, any, not — we're not

24    in any way categorizing debtor's counsel.

25          We just don't think that there is available cash to

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 16 of
39

1  pay professional fees from the estate.

2      THE COURT:  So if I accept that argument, and we don't

3  have an Examiner any more, what happens the next time a demand

4  is made on Mr. Goodsell?  Does he have to respond, or is he

5  working on the house even more?  In other words, is he in a

6  class of administrative claimants that are excluded?  What's

7  your response to that?

8      MR. HUCKINS:  Is he in a class of administrative

9  expenses that have been excluded?  We don't know what assets

10  will be available to the estate, other than the proceeds from

11  the Burlingame transaction.  There are presumably other assets.

12  No avoidance actions have been pursued.  That's a potential

13  source of —

14      THE COURT:  What assets are those?

15      MR. HUCKINS:  What?

16      THE COURT:  What are they?  There's a principal asset

17  that's a lawsuit against Burlingame that's being resolved, so —

18      MR. HUCKINS:  Correct.  And there are —

19      THE COURT:  — what other assets?

20      MR. HUCKINS:  — there are potentially other avoidance

21  actions.

22      THE COURT:  Can you be specific?

23      MR. HUCKINS:  Based upon the schedules that were filed

24  in the case, there —

25      THE COURT:  Can you be specific?

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 17 of 39

1     MR. HUCKINS:  — there are insider preferences that

2 were reflected in the debtor's schedules — or not in the debtor

3 schedules — the debtor's Statement of Financial Affairs.

4     THE COURT:  Can you be specific?

5     MR. HUCKINS:  I can't quantify it for the Court right

6 now without the schedules in front of me.  If we flipped open to

7 the schedules and the Statement of Financial Affairs —

8     THE COURT:  Okay.  So — all right.  So what you want

9 me to do is to say:  Thank you, Mr. Goodsell, for all the good

10 work that you did, even including the bad work that I'm

11 complaining about, but continue to serve the debtor.  And we're

12 going to pay surveyors and teachers, but not lawyers, until the

13 deal closes.

14     And then, of course, Burlingame has no obligation at

15 all under the contract.  And so Mr. Goodsell's only rights are

16 to hope that he gets paid and Mr. Bradlow gets paid out of the

17 preference recoveries.

18     MR. HUCKINS:  Well, Your Honor, —

19     THE COURT:  You know what?  This convinces me — I told

20 you that the other day, I'm as unhappy with the outcome as

21 anyone else.  I've reflected on what was said the other day, and

22 Ms. Cutler's remarks, and everybody else's remarks.  I have two

23 comments — or three.

24     One, I said that I — although I had this wonderful

25 idea of converting the case to Chapter 7 and having the trustee

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 18 of 39

1    operate the school, I've decided that's not going to work.

2           I've also reflected on whether this case would have

3    had a different course if Mr. Brad- — if a trustee had been

4    appointed.  And I'm convinced that it would not have.  In part,

5    the same person would have been the trustee, more likely Mr.

6    Bradlow.

7           And maybe the issue of signing documents would have

8    been easier, but the issue of all the other problems would not

9    have been.

10          And so I come to — the third comment is I'm almost

11   tempted to order that this debtor shut down the school, and lay

12   off the teachers, and pay them what it can along with other

13   administrative claims, and pay back the balances that have been

14   prepaid by the parents for the children in the future, and

15   convert the case to Chapter 7.  That's what I think ought to

16   happen.  This case is doomed to go down into worse condition

17   because of what you said, there's no cash.

18          And I can't expect the professionals to operate this

19   case with no cash.  They have no obligation to work for nothing

20   in an intolerable case.  And it can only get worse for the

21   benefit of the teachers.

22          What Burlingame wants me to do is to ignore the

23   Bankruptcy Code and pretend that this agreement didn't take

24   place in the context of a Chapter 11 case.  And I'm really of

25   the opinion that that's the best outcome at the moment.  So

Case: 08-30026    Doc# 290    Filed: 05/29/09    Entered: 05/29/09 16:45:37    Page 19 of
39

1   that's my thinking.

2          If the debtor doesn't make a motion to convert

3   voluntarily or the U.S. Trustee doesn't make a motion to convert

4   the case immediately, I may very well issue an order to show

5   cause why I shouldn't order the debtor to shut down the school

6   as soon as makes sense for the benefit of the future of the

7   students, and the parents, and the teachers, and to stop this

8   endless hemorrhaging for no apparent reason.  And now that has

9   nothing to do with the fee application.  It has to do with the

10  future conduct of this case.

11          MR. HUCKINS:  Your Honor, —

12          THE COURT:  There you are.  That's what I'm thinking

13  about.

14          MR. HUCKINS:  Your Honor, —

15          THE COURT:  And you know what, if that creates a

16  breach of contract and Burlingame believes it has an

17  administrative claim, fine, they can join the lineup for

18  administrative claimants along with everyone else.

19          MR. HUCKINS:  Your Honor, —

20          THE COURT:  So Burlingame is either going to solve

21  this problem or it's going down the toilet.  The whole case is

22  going.  And the school will be ordered to shut down.  And the

23  parents and teachers will be allowed — or the parents, at least,

24  will get their money back for the advanced payments.  I don't

25  have an answer for the teachers' accrued payments.  They are no

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 20 of
39

1    different under the law than the professionals.

2           MR. HUCKINS:  Your Honor, may I take a brief recess?

3    And then I need to comment on this.

4           THE COURT:  I'm not going to negotiate with Burlingame

5    in this courtroom.

6           MR. HUCKINS:  I'm not suggesting —

7           THE COURT:  I'm going to take the fee applic- — I'm

8    going to listen to Mr. Goodsell, if he wants to respond.  And

9    I'm going to take all matters under advisement on whether I

10   should be allowed to pay it.  I have your objections in hand.  I

11   don't need to read any more.  I'll just make one other comment.

12          The objections were pages and pages and pages of

13   criticism of the lawyers for what they didn't do.  It was

14   interesting.  You complain about a half a million dollars.  You

15   must of said five times in the objection, "a half a million

16   dollars."

17          And half the objection says what they didn't do.  They

18   didn't object to claims, which would have been a complete waste

19   of time.  They didn't file a plan, which would have been

20   impossible.  And yet they are criticized for it.  If Mr.

21   Goodsell had done all those things his fees would be higher.

22          But that all being said, I understand the realities of

23   this case.  And the most that can be paid to Mr. Goodsell's firm

24   or to Mr. Bradlow at this point is peanuts.  It's chump change

25   compared to the amount of money that they are owed.

Case: 08-30026    Doc# 290    Filed: 05/29/09    Entered: 05/29/09 16:45:37    Page 21 of
39

1       And I'm not about, at this point, to issue an order on

2  my own that strips the debtor of all cash, but I am going to

3  give you — I'm going to take the objections to the fees under

4  advisement.  And I'm going to let you and your client decide

5  whatever they want to try to do.

6       But I'm not going to take a break and come back and

7  say:  You know, maybe we'll let Mr. Bradlow be the Examiner, or

8  you know what maybe we'll put 5,000 more dollars into the deal.

9       If the U.S. Trustee doesn't choose to make a motion

10 along the lines I've made, I will probably issue an order to all

11 parties to show cause why I shouldn't order what I'm thinking

12 of.

13      So, Mr. Goodsell, do you want to say anything further?

14      MR. GOODSELL:  Shutting down the school would

15 certainly be not — would not be the result of my firm —

16      THE COURT:  What's that?

17      MR. GOODSELL:  Having the school shut down would

18 certainly be — not be the result of my firm *9:55:40*.

19      THE COURT:  Do you want to continue to work on this

20 case completely on the cuff —

21      MR. GOODSELL:  No.

22      THE COURT:  — for God knows how long?

23      MR. GOODSELL:  No, but I — this is —

24      THE COURT:  You're in this for the long haul, if you

25 say that.  Well, — but I'm not doing — this isn't today's

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 22 of
39

1    decision.

2           I realize that under certain circumstances maybe the

3    courts have the right just to take precipitous action.  I'm not

4    going to do that.  I feel strongly about the importance of the

5    school, too.  And if I seriously think about doing what I'm

6    thinking about doing, I will give everyone an opportunity to

7    convince me that it's the wrong thing to do.  So you don't have

8    to hear that today, but —

9           MR. GOODSELL:  Then I —

10          THE COURT:  — we're back to that point, is the choices

11   of options get less, fewer and fewer.  And I find Burlingame's

12   position is almost irreconcilable today, to be making one

13   argument on one hand about what's all inappropriate and on the

14   other hand saying, well, we're going to protect some other class

15   of people.

16          If your firm, Mr. Goodsell, wants to subordinate all

17   your fees, fine.  That still doesn't solve the problem.

18          MR. GOODSELL:  No, no, it doesn't.

19          THE COURT:  But, anyway, why don't you just argue, if

20   you want to, to the question of allowing fees — and in some

21   respects it's almost unnecessary because, you know, I'm sure, as

22   Mr. Huckins acknowledged, some number of dollars is clearly

23   allowable without regard to any objections.  And I could be

24   benevolent here and say:  I'll give you $200,000 today, but I'm

25   not really giving you anything.

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 23 of
39

1          MR. GOODSELL:  That's true.

2          THE COURT:  And have you drawn your retainer, by the

3    way?

4          MR. GOODSELL:  No.

5          THE COURT:  Well, I'm prepared to let you draw your

6    retainer.  I mean, —

7          MR. GOODSELL:  Thank you.

8          THE COURT:  — you know, big deal.  How benevolent of

9    me.  But the point is, I don't — whether I sustain their

10   objections in total, or in part, or not at all, it's paper money

11   at this point.  It's completely a waste of time, my time, your

12   time, everyone's time, but...

13         MR. GOODSELL:  Well, I understand that the Court is

14   prepared to take the allowance, the amount of the allowance,

15   under submission.  And that's fine.  We made our statement based

16   on what we've done.  The Court has been probably as actively

17   involved in this process as perhaps many cases that the Court

18   has had.  There's been a lot of judicial intervention here.

19         And so I think the Court has a very clear

20   understanding of what's gone on.  And if — our position is what

21   we've done has been beneficial and necessary at the time the

22   services were rendered, that the actions were done in a manner

23   to minimize the cost of the estate.

24         I know I've been at this counsel table a lot of times

25   on my own with two or three attorneys on the other side.  And so

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 24 of
39

1  I'm — I'm sure the Court is in an adequate or a perfect position

2  to evaluate those services.  There are line items that you can —

3        THE COURT:  Well, if we had — if there were unlimited

4  funds available and I knew that every dollar awarded to you

5  would be a dollar that would go to creditors, I would have a

6  duty obviously — it's part of my job — to go through your

7  application and come up with here and there and everywhere — and

8  to consider Burlingame's objections.

9        I may — I may be critical of the position Burlingame

10  has taken as the buyer here, but they certainly have a right as

11  a creditor to object to your fees.  Some of the objections are

12  little overblown and the antagonism between the principals has

13  now turned into — the lawyers are throwing barbs at each other

14  in the papers.  That's never fun.  But we don't have that

15  luxury.

16        And I don't have the luxury of paying you or the

17  unsecured creditors.  So I think I'm just going to defer the

18  whole question until we know where this case is going.  And if

19  the consensus of — I guess it's my decision — but if the

20  decision is to leave this debtor in Chapter 11 and to try to

21  have the sale close, then the obvious answer, Mr. Goodsell, is

22  your burden — the burden is heavy on you, as it would have been

23  on Mr. Bradlow if he stayed in, and on a trustee if a trustee

24  were appointed.

25        And I guess what I'm thinking of is it's time — it's

Case: 08-30026    Doc# 290    Filed: 05/29/09    Entered: 05/29/09 16:45:37    Page 25 of 39

1   time to do triage here and to stop pretending that there's going

2   to be a healthy school operating with adequate cash in the fall.

3   And I — my nonjudge reaction, my personal reaction, is this

4   school ought to be shut down in an ordinary fashion and the case

5   administered for whatever's left, but that — to say that's not a

6   today item.

7        So I'll take under advisement the pending

8   applications.  I will sign the order allowing Mr. Bradlow's

9   fees.  I will sign an order that authorizes their firm to

10   withdraw its retainer and apply it on account of the matter.

11   And I'll just take the balance of the application under

12   submission.

13        Ms. Cutler, are you still on the phone?

14        MS. CUTLER:  Yes, I am.

15        THE COURT:  I don't — I'm not asking you and the

16   United States Trustee to take an action, or not.  And I probably

17   can't order you to do something.  I thought more about your

18   comments from the hearing two days ago.  And I tried to express

19   myself a moment ago.

20        You were pretty adamant in your view that an error was

21   made.  I'm convinced that it was one of those errors that really

22   didn't matter, but if you — if you believe that maybe the better

23   thing to do is to put this very ill patient — give it a mercy

24   killing and do it in a proper way for the benefit of the school,

25   and the parents, and the children, then perhaps you'd like to

Case: 08-30026    Doc# 290    Filed: 05/29/09    Entered: 05/29/09 16:45:37    Page 26 of
39

1    make a motion to convert the case.

2            And, if you choose to do that, I'll consider the

3    arguments on all sides.  And if you choose not to, I'll make my

4    own decision whether I'm going to raise a *sua sponte*.

5            So do you have anything else you wish to add at this

6    point?

7            MS. CUTLER:  No, Your Honor.

8            THE COURT:  Okay.

9            MS. CUTLER:  We will consider your comments.

10           THE COURT:  Pardon me?

11           MS. CUTLER:  Your Honor, we will consider your

12   comments and consider very closely and immediately whether to

13   file a motion to convert.

14           THE COURT:  Okay.  Mr. Huckins, anything else?

15           MR. HUCKINS:  Nothing further, Your Honor.

16           THE COURT:  Pardon?

17           MR. HUCKINS:  Nothing further.

18           THE COURT:  Okay.  Well, that's where we are.  Then

19   for now we have a debtor-in-possession in contract, and no

20   Examiner, and Mr. Goodsell, at least for now, if the decision of

21   Burlingame is to press forward and try to close a sale, I guess

22   that's your marching order.

23           MR. GOODSELL:  I have two questions, Your Honor.  In

24   the event that — well, should there be a further status

25   conference, or should we just await the outcome of whatever the

Case: 08-30026    Doc# 290    Filed: 05/29/09    Entered: 05/29/09 16:45:37    Page 27 of
39

1    next motion is?

2              THE COURT:  Well, I — as I say, you know, I want

3    everyone to know, I think a lot about this case, too.  And how

4    many times do I have to say that I'm sure I'm one of many people

5    that's very unhappy with the way this case has progressed.

6              And I just need to reflect in my own mind whether I

7    really think that the outcome that I'm thinking of would be the

8    best.

9              MR. GOODSELL:  I'm just saying should — in the event

10   that no actions are taken by anyone, should we have something in

11   June just —

12             THE COURT:  Now you said the other day that if the

13   Examiner leaves and the Burlingame deal doesn't go forward, that

14   you believe there are other options.  And so I guess the default

15   rule at the moment is you are under an obligation to try to

16   facilitate completion —

17             MR. GOODSELL:  Yeah.

18             THE COURT:  — of the Burlingame matter.  The

19   Burlingame's lawyers and principals have heard my comments.

20   They see — they can read the numbers as well as I can.  It's not

21   my place to decree that Burlingame doesn't have rights.  Of

22   course, it has rights under its contract and as a creditor.

23             But it is my opinion that this thing is only going to

24   get worse rather than better.  And the numbers are what they

25   are.  And I can't expect the professionals to work for nothing.

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 28 of
39

1      But if the debtor has — well, so that's where we are.

2  I could set another status conference if you want, but either —

3      MR. GOODSELL:  No, I — if we need one, we'll —

4      THE COURT:  Either the U.S. Trustee will file a

5  motion, or I will *sua sponte* set a matter, or someone else here

6  may choose.  Somebody else may have a better idea.  So we know

7  where things stand, and it's in this present situation, so...

8      MR. GOODSELL:  Yes, that's correct.

9      MR. HUCKINS:  Your Honor?

10      THE COURT:  Yes.

11      MR. GOODSELL:  I had a second request.

12      MR. HUCKINS:  Oh, I'm sorry.

13      MR. GOODSELL:  For a couple of weeks I've been asking

14  Burlingame to provide me with a copy of their application to the

15  — their licensing application.  And I'm being completely

16  stonewalled.  I don't even know for certain if it's been filed.

17  Can you direct them to give me a copy?  There's no Examiner any

18  more, and they're just not going to do it.

19      THE COURT:  Is that — Mr. Huckins, is there some

20  reason why that can't be provided?

21      MR. HUCKINS:  Your Honor, Mr. Goodsell has asked for

22  that.  We acknowledge it.  There is no obligation on

23  Burlingame's part to provide a copy of the application.  He has

24  repeatedly informed us, when we were seeking the information on

25  the debtor's application, that the information could be obtained

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 29 of
39

1  from the CDSS.  He can confirm that the application has been

2  filed.

3          THE COURT:  Why can't you just provide it to him?

4          MR. HUCKINS:  Because it contains confidential

5  information that Burlingame does not want disseminated to

6  debtor's counsel.

7          THE COURT:  How about under a protective order?

8          MR. HUCKINS:  Excuse me?

9          THE COURT:  Why not under a protective order?

10          MR. HUCKINS:  Your Honor, with what constraint, as

11  attorneys' eyes only?

12          THE COURT:  You tell me.  I mean, I don't — I don't

13  know.  It seems like we have an extremely complicated deal under

14  extremely stressful circumstances.  And the fundamental document

15  that the buyer has to produce a state agency is unwilling to

16  produce to the seller.  It strikes me there's something wrong

17  with this picture.

18          MR. HUCKINS:  If —

19          THE COURT:  But if there are confidential matters in

20  there, then it can be sealed and protected.  And so you tell me

21  who, who will you be concerned about?

22          MR. GOODSELL:  I'll accept attorneys' eyes only, Your

23  Honor.  That's fine.

24          THE COURT:  Attorneys' eyes only, there you go.

25          MR. HUCKINS:  Excuse me, Your Honor.  Excuse me,

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 30 of
39

1    counsel.  The only explanation I heard was that they need

2    confirmation that the application was filed.  If that's what

3    they need, they can call the CDSS and they can find out whether

4    it was filed.  If there's an application on file, the CDSS will

5    tell them.

6              THE COURT:  Well, you're an officer of the Court.  You

7    can make the representation.  Your credibility, I don't think,

8    is at issue here.  Has it been filed?

9              MR. HUCKINS:  My client informs me that it has been

10   filed, yes.

11             THE COURT:  Well, you don't know of your own mind that

12   it was filed?

13             MR. HUCKINS:  I don't know.  They have told me that it

14   was filed.

15             THE COURT:  Okay.  Well, what about —

16             MR. HUCKINS:  I have no reason to believe that what

17   they've told me is inaccurate.

18             THE COURT:  I understand.  We all have to do that.

19   What about sharing it with Mr. Goodsell, attorneys' eyes only,

20   not to be shared with his client?

21             MR. HUCKINS:  I'll have to confer with my counsel — or

22   with my client.

23             MR. GOODSELL:  Well, I guess the point is, Your Honor,

24   you know, we're being asked to work this deal forward.

25             THE COURT:  But —

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 31 of 39

1      MR. GOODSELL:  And we don't even know if the deal is

2  going to happen.  And the things that are critical to the deal,

3  from their side —

4      THE COURT:  I couldn't agree more.

5      MR. GOODSELL:  — they won't share.

6      THE COURT:  I mean, to me, like this is bizarre.

7      MR. HUCKINS:  Your Honor, —

8      THE COURT:  This is all the more reason why I think I

9  should shut the whole damn thing down, frankly.

10     MR. GOODSELL:  God, I don't want to be responsible for

11 that.

12     THE COURT:  I will be.

13     MR. GOODSELL:  I don't want my firm to be responsible

14 for shutting it down.  The fallout — I mean, I don't think Linda

15 Koelling would — would convert the case.  I just don't think she

16 will.  She's got too much invested in it.  And the fallout with

17 teachers, and parents, and everybody else is just more than I

18 want to bear.

19     THE COURT:  I told you I'm not going to do it on my

20 own.  I won't do it at all without hearing all the reasons why I

21 shouldn't.

22     MR. GOODSELL:  I understand.

23     THE COURT:  Mr. Huckins, please confer with your

24 client.  If your client is willing to share the application that

25 you represent on their word that it has been filed with Mr.

Case: 08-30026    Doc# 290    Filed: 05/29/09    Entered: 05/29/09 16:45:37    Page 32 of
39

1  Goodsell only, he can stipulate under a protective order that it

2  will be for his eyes only.  He will not share it with Ms.

3  Koelling, who I assume is the principal person that you don't

4  want to see it.  And Mr. Goodsell notes that.

5       But he, in my judgment, particularly under these

6  circumstances, he has a right to see it.  I'm not going to order

7  it at this point.  I think it would be really bizarre to have a

8  buyer/seller transaction where you end up with discovery, you

9  know, and it turned into a contested matter.  That would take

10 contested matters to a new level.

11      I suppose he could order — get it under 2004.  But

12 this is equally silly.  So I think you ought to convince your

13 clients they ought to share it with him.

14      What's your other request?

15      MR. GOODSELL:  Oh, that — that was it.  I mean the —

16      THE COURT:  Anything else, Mr. Huckins?

17      MR. HUCKINS:  Your Honor, I just would make one

18 further comment.  There was a declaration filed last night that

19 I'd like to draw the Court's attention to.  And the Court could

20 review it for its contents.  And I just want to alert the Court

21 to that declaration.

22      THE COURT:  Who is that from?  I didn't look at the

23 docket this morning.

24      MR. HUCKINS:  It's from a gentleman by the name of

25 Robert Vienna.

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 33 of
39

1    THE COURT:  Vienna?

2    MR. HUCKINS:  Vienna.

3    MR. GOODSELL:  Your Honor, I haven't seen that.  It

4  hasn't been served on me.  There is no way I can respond to it.

5  I ask that the Court, you know, either not take it under

6  consideration or let me file something —

7    MR. HUCKINS:  I don't even know what it says.

8    THE COURT:  Well, Mr. Huckins, without talking about

9  the content, what's the context in which I would look at it?

10  What's it relate to?

11    MR. HUCKINS:  The declaration is from a gentleman

12  whose wife operates the Chinese language program at Kids

13  Connection.  And Ms. Koelling approached Mr. Vienna at the

14  school informing Mr. Vienna that she was starting another

15  competing school within a mile of Kids Connection and that she

16  asked Mr. Vienna to relocate the Chinese language program to the

17  other school.

18    THE COURT:  Well, that — okay.  What — if I consider

19  it, what do I do with it?

20    MR. HUCKINS:  I just want the Court —

21    THE COURT:  Is it relevant to anything that's pending

22  before me now, other than —

23    MR. HUCKINS:  I want the Court to be aware of that.

24    THE COURT:  But you have to put it in context.

25    MR. HUCKINS:  Your Honor, I think in context of this

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 34 of
39

1   entire case and trying to get a transaction closed, and you have

2   a responsible officer who is apparently embarking on setting up

3   a competing organization while she's the responsible officer and

4   trying to essentially channel programs of the existing school to

5   another location.

6           THE COURT:  Okay.  I — that's certainly serious stuff.

7   But, again, I don't have it in the context of anything.  I get —

8   Mr. Vienna chose to file something that he filed.  Did he — he

9   filed it in hardcopy with the Court; is that what you're saying?

10          MR. HUCKINS:  No, he — that — it was filed last night

11  electronically.

12          THE COURT:  By whom?

13          MR. HUCKINS:  By Burlingame's counsel.

14          THE COURT:  Oh, okay.

15          MR. HUCKINS:  And I will be happy to provide you with

16  a signed copy.

17          THE COURT:  You don't have to.  But why are you filing

18  it?

19          MR. HUCKINS:  Why am I filing it?  To apprise the

20  Court of current events that —

21          THE COURT:  Mr. Huckins, that's not the way we do

22  things.

23          MR. HUCKINS:  I understand.  This case is very

24  unusual.

25          THE COURT:  You know, we — I don't hold fireside chats

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 35 of
39

1   with everybody who wants to tell me things.  You file a motion.

2   Oddly enough, a declaration like that, if it's legit, might be

3   the perfect motion to appoint a trustee or to convert the case.

4          I'm not — you know, I take your word that it says what

5   it says, but —

6          MR. HUCKINS:  Your Honor, —

7          THE COURT:  — you can't go filing declarations and

8   then ask me to take them into account and not relate it to

9   anything.

10         MR. HUCKINS:  Your Honor, this came to our attention

11  yesterday.  We knew that the issue of relieving Mr. Bradlow as

12  the Examiner in the case would be at least one matter addressed.

13  I thought it was pertinent information.  It was — I apologize

14  for not putting it in context.  But in light of the matters that

15  were being considered today, I thought it was pertinent

16  information.

17         THE COURT:  Well, it sounds to me like hearsay, for

18  openers.

19         MR. GOODSELL:  Your Honor, I — well, I'm — I'm sorry.

20  But if he received this yesterday — you know, I filed something

21  yesterday.  I made sure that it got faxed to him.  I made sure

22  he had a copy so he could respond.  This is something ECF filed

23  late at night, knowing I'm coming up here in the morning, and

24  we're talking about it.  This —

25         THE COURT:  No, I understand.  I — and —

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 36 of
39

1          MR. GOODSELL:  This is just —

2          MR. HUCKINS:  I didn't ask the Court to act on it.  I

3   directed the Court's attention —

4          MR. GOODSELL:  You — you —

5          MR. HUCKINS:  — to it.

6          THE COURT:  Mr. Huckins, —

7          MR. GOODSELL:  You asked the Court to take it into

8   consideration.

9          THE COURT:  — you know what, you're not a newcomer to

10  this Court.  I'm supposed to act on things that I act on.  I

11  don't just go reading things when you tell me to.  And, you

12  know, why would I read it?  What would I get from it?

13  Therefore, I should disallow Goodsell's fees?

14         MR. HUCKINS:  I did not suggest that.

15         THE COURT:  Therefore, I should let Bradlow stay in

16  the case?  I mean, what are you saying?

17         MR. HUCKINS:  Your Honor, we — at the prior hearing on

18  Wednesday we talked about a vacuum in this case.

19         THE COURT:  That's right.

20         MR. HUCKINS:  We did.

21         THE COURT:  That's why I'm thinking about what I'm

22  thinking about.

23         MR. HUCKINS:  I understand that.

24         THE COURT:  And, you know, —

25         MR. HUCKINS:  And, Your Honor, if necessary, I — I

Case: 08-30026   Doc# 290   Filed: 05/29/09   Entered: 05/29/09 16:45:37   Page 37 of
39

1  think we've — we've highlighted the issue.  If we need to put it

2  in context, or if there are other events that transpire, we can

3  deal with it at that point.

4          THE COURT:  Okay.  The matter is submitted.  I'll see

5  you next time, whenever next time is.

6          MR. HUCKINS:  Thank you, Your Honor.

7          MR. ISAACS:  Thank you, Your Honor.

8          THE COURT:  Thank you, Mr. Isaacs.

9      (Proceedings were concluded at 10:13 o'clock a.m.)

10                          —o0o—

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 08-30026    Doc# 290    Filed: 05/29/09    Entered: 05/29/09 16:45:37    Page 38 of
39

State of California          )
                            )     SS.
County of San Joaquin       )


        I, Susan Palmer, certify that the foregoing is a true
and correct transcript, to the best of my ability, of the above
pages, of the digital recording provided to me by the United
States Bankruptcy Court, Northern District of California, of the
proceedings taken on the date and time previously stated in the
above matter.

        I further certify that I am not a party to nor in any
way interested in the outcome of this matter.

        I am a Certified Electronic Reporter and Transcriber
by the American Association of Electronic Reporters and
Transcribers, Certificate No. 00124.  Palmer Reporting Services
is approved by the Administrative Office of the United States
Courts to officially prepare transcripts for the U.S. District
and Bankruptcy Courts.


                                Susan Palmer
                                Palmer Reporting Services

                                Dated May 26, 2009