1    UNITED STATES BANKRUPTCY COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    (SAN FRANCISCO DIVISION)

4

5    In re:

6    KIDS CONNECTION, INC.,              Case No. 08-30026-DM

7                                        Chapter 11

8                                        San Francisco,California
                                         March 6, 2009
9                                        11:27 a.m.
             Debtor.
10   _____/

11

12                    TRANSCRIPT OF PROCEEDINGS
          1.  MOTION TO SELL FREE AND CLEAR OF LIENS AND
             INTERESTS IN REAL AND PERSONAL PROPERTY
13            (BURLINGAME CAPITAL PARTNERS,II, L.P.)
          2. MOTION TO SELL FREE AND CLEAR OF LIENS AND
14      INTERESTS IN REAL AND PERSONAL PROPERTY AND VALUE
        SECURED CLAIMS (NOBEL LEARNING COMMUNITIES, INC.)

15

16   KIDS CONNECTION, INC.,

17           Plaintiff,

18       v.                             A.P. No. 08-3049

19   BURLINGAME CAPITAL PARTNERS II, L.P.,

20           Defendant.
     _____/

21

22                    STATUS CONFERENCE

23        BEFORE THE HONORABLE DENNIS MONTALI
              UNITED STATES BANKRUPTCY JUDGE

24

25

1  APPEARANCES:

2

   For Burlingame Capital:    ALLEN, MATKINS, LECK, GAMBLE &
3                             MALLORY, LLP
                              BY: ROBERT MOORE, ESQ.
4                             1900 Main Street, 5th Floor
                              Irvine, California 92614
5
                                      -and-
6
                              ALLEN, MATKINS, LECK, GAMBLE &
7                             MALLORY, LLP
                              BY: WILLIAM W. HUCKINS, ESQ.
8                             Three Embarcadero Center, 12th
                              Floor
9                             San Francisco, California 94111

10

11 For the Debtor:           CAMPEAU GOODSELL SMITH, L.C.
                              BY: SCOTT GOODSELL, ESQ.
12                            440 North First Street, Suite 100
                              San Jose, California 95112
13

14
   For City National:        JEFFER, MANGELS, BUTLER & MARMARO
15                            BY: RICHARD A. ROGAN, ESQ.
                              Two Embarcadero Center, 5th Floor
16                            San Francisco, California 94111

17

18 The Examiner:             DAVID A. BRADLOW
                              3947 23RD Street
19                            San Francisco, California 94114

20

21 For Lois Brady:           WENDEL, ROSEN, BLACK and DEAN
                              BY: MARK BOSTICK, ESQ.
22                            1111 Broadway, 24th Floor
                              P.O. Box 2047
23                            Oakland, California 94604

24                            (Appearing Telephonically)

25

```
 1   APPEARANCES (CONTINUED):

 2
     Court Recorder:          JONEITA HAMMONDS
 3                            UNITED STATES BANKRUPTCY COURT
                              235 Pine Street
 4                            San Francisco, California 94104

 5

 6   Transcription Service:   Jo McCall
                              Electronic Court
 7                            Recording/Transcribing
                              2868 E. Clifton Court
 8                            Gilbert, Arizona 85295
                              Telephone: (480)361-3790
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S
2   March 6, 2009                        11:27 a.m.
3                       --—oOo—--
4            THE CLERK: All rise.  The court is now in
5   session, The Honorable Dennis Montali presiding.
6            THE COURT: Good morning.
7            ALL COUNSEL: Good morning, Your Honor.
8            THE CLERK: Matter of Kids Connection, Inc.
9            MR. GOODSELL: Your Honor, Scott Goodsell for the
10  Debtor.
11           THE COURT: Good morning.
12           MR. HUCKINS: Good morning, Your Honor, Bill
13  Huckins and Mike Greger on behalf of Burlingame.
14           MR. BRADLOW: Good morning, Your Honor, David
15  Bradlow, the examiner.
16           THE COURT: Good morning.  Mr. Rogan?
17           MR. ROGAN: Good morning, Your Honor, Richard
18  Rogan for City National Bank.
19           THE CLERK: And Mr. Bostick is on the phone.
20           THE COURT: On the phone?
21           MR. BOSTICK: Your Honor, Mark Bostick appearing
22  for Lois Brady.
23           THE COURT: I thought she was out of this case.
24           MR. BOSTICK: Well, she's out, but there is a
25  right to payment, and we want to see what happens with
```

1  that.

2            THE COURT: Okay.  Well, you're always welcome.

3            MR. BOSTICK: Thank you.

4            THE COURT: All right.  Mr. Goodsell, what's -- is

5  there anything to do today?

6            MR. GOODSELL: I think so.  I think we can do most

7  things today.  The form of the Asset Purchase Agreement has

8  been finalized, and I believe that a copy of that was

9  transmitted to you earlier this week.

10           THE COURT: That was with the --

11           MR. GOODSELL: With the red lines.

12           THE COURT:  -- Healy's motion, right?

13           MR. GOODSELL: I think so.

14           THE COURT: Yeah.  Right.

15           MR. GOODSELL: The only material change or

16 difference that I'm aware of, other than a lot of clean-up

17 stuff, was the release provision, where Kids Connection is

18 releasing all claims against Burlingame as a part of this.

19 And that's different from, I guess, the original version,

20 but as long as the Court doesn't see that as being

21 material --

22           THE COURT: Why?  What's material about a general

23 release?

24           MR. GOODSELL: Well --

25           THE COURT: I didn't have a chance to work my way

1 through the agreement. Is the release effective -- it's
2 not effective until the deal closes; is it?
3          MR. GOODSELL: Correct. It's part of the purchase
4 agreement. It's not -- if the deal never --
5          THE COURT: It's not -- they don't get the release
6 when I sign the order. They get the release when the deal
7 closes, right, Mr. Huckins?
8          MR. HUCKINS: Your Honor, yes. And just to kind
9 of flush out the entire item, one of the requirements from
10 the Debtor was that Burlingame release its liens and
11 interests against the estate, not its claim, but release
12 its liens and interests. And we said fine, we'll give you
13 a release of our liens and interests against the estate at
14 closing, but we also want a release of claims back by --
15          THE COURT: Yeah, understood. I mean I'm not
16 surprised.
17          MR. HUCKINS: No, and so that was part of the
18 dynamic. That part of the provision was not highlighted by
19 the Debtor, but that was the explanation for the inclusion
20 of the release.
21          THE COURT: Well, in a sense, if the Debtor sells
22 you the property, it's up to you whether you keep a lien on
23 your own property, right?
24          MR. HUCKINS: Correct.
25          THE COURT: So -- but it's clean. I mean

1  essentially you're credit bidding -- effectively credit

2  bidding; aren't you?

3          MR. HUCKINS: Correct.

4          THE COURT: Whether you have any deficiencies

5  against other defendants isn't my concern and the

6  bankruptcy estate's concern.  Right?

7          MR. HUCKINS: Correct.

8          THE COURT: Right.  So -- and as I understand it,

9  under your proposal, Burlingame's claim is subordinated to

10 other creditors, but it's still a claim against the Debtor.

11         MR. HUCKINS: That's true.

12         THE COURT: Right.  Okay.  No, I don't -- you

13 know, I was thinking about this release, Mr. Goodsell, and

14 although I haven't had a chance to read it, and I presumed

15 that it would become effective only if the deal closed, but

16 I hadn't verified it, you know, this case has been unusual.

17 We don't have a Creditors' Committee.  We have the major

18 creditor and the major secured creditor who have been

19 extremely active.  We have another creditor who in effect

20 sold her position to Burlingame, and beyond that, the

21 interests of unsecured creditors are pretty minimal.  And

22 so the only thing that I guess I have to inform myself

23 about is, are there any unsecured creditors out there that

24 need to know that Burlingame is being given a release.

25 And, you know, how do I know?

1      MR. GOODSELL: I'm not sure that it's material,
2  because I don't know that Kids Connection has any claims
3  against Burlingame.
4          THE COURT: That's really where I -- I was going
5  to put the ball back in your court.
6          MR. GOODSELL: Right.
7          THE COURT: If you think you're going to hit the
8  ball over the net to me so I have to take the heat --
9          MR. GOODSELL:  (Laughing.)
10         THE COURT:  -- I'm going to hit it back to you
11 and say, you're the Debtor's counsel.  You have a duty to
12 advise whether you think the estate has any claims against
13 Burlingame, and if you tell me you don't think there are
14 any, that's good enough for me.
15         MR. GOODSELL: If there were any claims, it would
16 be by nature of either a setoff or a reduction of
17 Burlingame's claim, which in this purchase agreement is
18 being subordinated, so I just can't —- to the other
19 unsecured creditors -- so I just can't see how if there
20 were a claim, it would have an impact on unsecured
21 creditors.  So --
22         THE COURT: By the way, I made a misstatement.
23 It's incorrect, Mr. Huckins, I think to say your client is
24 credit bidding.  Your client isn't credit bidding.  Your
25 client is --

1          MR. HUCKINS: No, we're subordinating.

2          THE COURT: Well, no, but it's important.  It's

3 different.  I mean a credit bid would in effect be reducing

4 the debt.

5          MR. HUCKINS: Reducing our claim, you're right.

6          THE COURT: And I misspoke.  You're bringing in

7 third-party money to buy the assets, and Burlingame is

8 voluntarily subordinating its claim to other -- it's

9 releasing its secured claim, and subordinating the residual

10 unsecured claim.  So it was error to state it that way.

11          Well --

12          MR. GOODSELL: So, the bottom line, Your Honor,

13 is, in the context of this transaction, the Debtor does not

14 believe that there's any material impact out of that

15 clause, and because it doesn't come into effect unless this

16 transaction closes, in which case, their claim --

17 Burlingame's claims are subordinated anyway, we just don't

18 see that it's -- it has any material impact on the

19 transaction or on the claim.  And of course if the

20 transaction never closes, then there's no compromise.

21          THE COURT: Now, Mr. Bradlow, you're an

22 administrative creditor.  You're not concerned, I take it.

23          Mr. Rogan, your client is a secured creditor and

24 you'll get paid.

25          MR. ROGAN: We're fine, as long as we get paid out

1  of escrow.

2         THE COURT: And your client is a claimant really

3  only against Burlingame, not against this estate, right?

4  Am I right, Mr. Bostick?

5         MR. BOSTICK: I'm sorry, Your Honor.

6         THE COURT: You don't have a claim against the

7  estate at all.  Ms. Brady's claim is against -- it's not

8  even a claim; it's an entitlement to be paid some more

9  money by Burlingame, right?

10         MR. BOSTICK: That's absolutely correct.

11         THE COURT: So we have no -- I mean what I'm

12  getting at is that the combination of no meaningful

13  creditor exposure here and Debtor's counsel's

14  representations that he knows of no claim, I have no

15  problem with this release being part of the deal.  To the

16  extent that -- I mean I don't even want to say it rises to

17  the level of a compromise because there's nothing being

18  compromised.  It's not unreasonable for a buyer to say this

19  is where we part company.  The bankruptcy estate and the

20  buyer part company, when the buyer pays the price -- and

21  the buyer happens to be a creditor -- pays the fee and

22  leaves -- other than in the subordinated claim position.

23         So, I'm prepared to approve it.  I mean the

24  question is what else do we need to do?  Is there anything

25  else to do at this point?

1    MR. GOODSELL: There's -- we have one other --

2 well, actually we'd like to go ahead and proceed with

3 whatever showings we need to make in order to have the

4 Court satisfied with the order that Burlingame intends to

5 present.  We have one detail, and that is, who will sign

6 this Asset Purchase Agreement?  The documents are drawn up

7 for the signature of Linda Koelling who's the president.

8 Linda -- Ms. Koelling and Kids Connection's counsel have

9 had several discussions, a number of discussions, and for

10 various reasons that are personal and concerns about her

11 prior involvement with Burlingame and her ongoing

12 litigation, she's indicated that while she will do

13 everything that is necessary to close the deal, she's

14 uncomfortable signing yet one more document between them.

15    So we've spoken with the current shareholder, who

16 is not Linda Koelling; it's Sean Azad.  Mr. Azad acquired

17 the shares of Kids Connection last summer some time when

18 Ms. Koelling -- when Trustee Brady had abandoned them back

19 to Ms. Koelling out of the Koelling case, and she was

20 trying to raise some funds to hire Mr. Davis.

21    THE COURT: Right.  I recall that.

22    MR. GOODSELL: Okay.  So we have spoken with him,

23 and he said that he's comfortable signing this although he

24 did want to talk to his attorney just to make sure there

25 wasn't a personal liability issue.  And apparently, he's

1  not spoken to that attorney yet.  So our intention is that

2  he will do so today or Monday as he's able to reach that

3  attorney, and then sign it, and then we would just

4  submit -- having all the other findings made, we would just

5  submit --

6           THE COURT: Does he have to be appointed to an

7  officer position to sign it?

8           MR. GOODSELL: If he does, he's the exclusive

9  shareholder and he can have his shareholder meeting, make

10  himself chairman of the board, and authorize himself to

11  sign it.

12           THE COURT: And, Mr. Huckins, is this acceptable

13  to Burlingame?

14           MR. HUCKINS: If the requisite corporate

15  formalities are followed, that's acceptable.

16           THE COURT: Okay.

17           MR. GOODSELL: Your Honor --

18           THE COURT: So if this man's lawyer tells him not

19  to, then we have a problem, but we'll have to cross that

20  bridge when we come to it.

21           MR. GOODSELL: Yeah, if he tells him not to, then

22  it's not Sean or Linda are adverse to this going forward,

23  it's just, we'll have to have someone else given the

24  authority to do that.

25           THE COURT: How about the gentleman next to you?

1    MR. GOODSELL: I would only ask him to do that if
2  we've exhausted all the other remedies.
3    THE COURT: Well, Mr. Bradlow can't be a trustee,
4  but he can be briefly a corporate officer.
5    MR. GOODSELL: That is correct, but I suspect
6  that --
7    THE COURT: Well, let's hope this is a non-issue.
8    MR. GOODSELL: Given that I've discussed this with
9  him, it's my suspicion that he would prefer us to push with
10 Mr. Azad first.
11   THE COURT: Well, I don't blame him, But let's
12 assume that it's a non-issue.  You heard Mr. Huckins
13 confirm that this plan is acceptable and if this gentleman,
14 Azad, has no problem with it, then it sounds fine.
15   MR. GOODSELL: Right.
16   THE COURT: Unless -- Mr. Huckins, have you
17 uploaded a form of order or given me --
18   MR. HUCKINS: It is attached to the --
19   THE COURT: To the agreement?
20   MR. HUCKINS:  -- Notice of Status Motion.  Yes,
21 the proposed form.  I will alert the Court that the --
22 depending on who signs the agreement and in what capacity,
23 it may need to be modified.  So I think we need to get that
24 issue resolved before we actually submit the final form of
25 proposed sale order.

1        THE COURT: Okay.  Tell me again where I'd find
2  it?

3        MR. GOODSELL: It was the document filed by Mr.
4  Healy on Wednesday.  It's a big thick document.

5        THE COURT: Okay.  The order is part of the
6  exhibit.

7        MR. GODOSELL: It's attached as an exhibit, I
8  believe.  I don't remember which exhibit.

9        THE COURT: Okay.  Well then I probably have it.
10  No, I have it loose.  I don't -- I mean it itself is an
11  exhibit to the APA, right?

12        MR. HUCKINS: Yeah.  I can direct the Court's
13  attention at this point.  It's -- if you want to write this
14  down -- Document No. 241, and it begins at page 111, if
15  you're looking at the page number that comes off the
16  computer system, 111 of 173.

17        THE COURT: But wait a minute.  What I have is the
18  chambers -- oh here it is.  Sale Order.

19        MR. HUCKINS: Correct.

20        THE COURT: All right.  Let me pull it out.  You
21  know, I love to read long Asset Purchase Agreements just in
22  my spare time, but --

23     (Laughter.)

24        MR. GOODSELL: You must be the only judge.

25        THE COURT: But I didn't -- I didn't -- I was

1  happy to see we had one here.  Let me just take a quick

2  look at the order.

3      (Pause.)

4          Well, Mr. Huckins, I have a little problem on

5  page 2, paragraph 5.  I think that that "free and clear" is

6  inconsistent with our model order and our sale guidelines

7  because –- and our local rule.  You can have sales free and

8  clear of designated liens; you can't have it free and clear

9  of people in the schedules because if they have –- if

10 somebody is in the schedule, you've got to assert a lien.

11 And the same with special notice.  Well, I'm not sure I

12 understand the phrase:

13          "The claims by parties who have filed claims or

14          requests for special notice, provided the parties

15          do not assert a lien..."

16          MR. GREGER: Your Honor, if I may.  The form

17 language that is in the order comes from this Court's

18 general order, and I believe the local rules provide that

19 it's possible to sell free and clear of the claims of

20 creditors and parties who receive special notice, so long

21 as they receive notice –-

22          THE COURT: Didn't we have the same discussion in

23 the Heller case, but the difference in this case is that

24 the parties actually received notice, to the best of our

25 knowledge, and the language of the order itself models the

1  language of the general order that was approved by the
2  Court.

3          THE COURT: Yeah, but I think that -- well, okay.
4  Let's go back -- let me hold that point.  We've got City
5  Bank.  That's no problem; Fitzpatrick, no problem;
6  Burlingame; Martel, bankruptcy; Linda and Fred Koelling.
7  Are they named as respondents on the motion?

8          MR. HUCKINS: Were they served with notice of
9  this?

10         THE COURT: The motion -- well no, in other words,
11 leaving aside the question of creditors generally and
12 scheduled creditors, the local rule requires known
13 claimants be named as respondents in the motion, and I --
14 somewhere in here is the motion.  I just don't remember
15 where it is.  And I don't recall that they were named as
16 respondents.

17         MR. HUCKINS; Your Honor, at this point, they were
18 referred -- my recollection is they were referred to in the
19 motion as possibly having claims.

20         THE COURT: We have so many motions,
21 unfortunately.

22         MR. HUCKINS: Ms. Koelling clearly had notice of
23 the motion itself, and at this point, it is unclear whether
24 Ms. Koelling and Mr. Koelling assert any liens or claims
25 against the estate.  I mean we went through this at the

1  last hearing that the only thing that's on file at this
2  juncture is a declaration.

3          MR. GREGER: Your Honor, in the motion itself on
4  page 5, footnote 3, it provides that:

5              "The original claim in the name of Linda Koelling
6              is asserted by Lois Brady, Trustee in the
7              Koelling bankruptcy case, and the compromise
8              order specifically notes that nothing therein
9              shall prejudice Linda Koelling's right to assert
10             a claim in this case.  Debtor notes the
11             possibility of the claim or claims by Linda
12             Koelling."
13 So it did identify Linda Koelling as at least potentially
14 asserting some form of claim.

15         THE COURT: Yes, but not her husband though, not
16 Fred Koelling.  In other words, I'm looking back at -- is
17 this important?  I mean is this an issue?  I mean I want to
18 do this deal, not kill the deal.  But where has he ever
19 been named as a respondent at all?

20         MR. HUCKINS: I guess if her interest was
21 community property, he would derivatively have at least an
22 interest in whatever she had, and by her having notice, as
23 Mr. Greger has just pointed out, then I think --

24         THE COURT: Look, you want me to strip these
25 assets free of a person's alleged lien.  None of us really

1  believe he has one, but you want me by order to say, your
2  lien is stripped, even though there's never been a motion
3  that directs it at Mr. Koelling to say, the Debtor wants to
4  sell free of your liens.  Why would I do that?  I mean the
5  rules don't contemplate it, but why do you need it?
6          MR. HUCKINS: Your Honor, let's --
7          THE COURT: You know he doesn't have one.
8          MR. HUCKINS: Let's address it this way.  Why
9  don't -- after -- we've got to get the Asset Purchase
10 Agreement signed, and we've got to get the sale order
11 resolved with respect to the appropriate signatory on the
12 Asset Purchase Agreement.  While we're doing that, and
13 that's not going to happen today, we will look into the
14 issue of Fred Koelling and whether or not that's necessary.
15         THE COURT: Okay.  That's fine.
16         MR. GOODSELL: With respect to your comments, Your
17 Honor, I mean Mr. Koelling certainly has known of the
18 bankruptcy.  He's never filed a claim.  The Debtor has not
19 scheduled any claim in favor of him.  I just -- it's -- I
20 understand Mr. Huckins' logic, but I think if there were a
21 claim there, it's certainly been waived, and I don't --
22         THE COURT: Okay.  Now, let's -- yeah, I
23 understand.  I think Mr. Huckins makes a legitimate point.
24 See if we can resolve it.  I think that Mr. Greger and I
25 have had prior discussions about the model order and the

1 sale guidelines, and there's a little bit of a glitch.  He

2 is correct that if there's proper notice, then we can do

3 what we're doing.  But you can't name somebody as a

4 stripee, if you haven't named him as a respondent.  But

5 here -- now I'm looking back at these various motions, and

6 now I'm up to paragraph 15.  In paragraph 15, there's the

7 365 language.  But have we ever had a motion to assume and

8 assign contracts?

9          MR. GOODSELL: No.

10          THE COURT: So I can't really be signing an order

11 that implements 365 until we've done that.  And I'm willing

12 to do whatever you want to make it happen.

13          MR. GOODSELL: Obviously we're anticipating a

14 close in late June.  I'm not concerned about lack of an

15 opportunity to get an order.

16          THE COURT: Okay.  But you realize that I don't

17 think I can sign an order that does what hasn't been

18 properly done.  Mr. Greger, that's not in our model order,

19 right?

20          MR. GREGER: That's is correct, Your Honor.

21          THE COURT: Okay.  I mean I wonder if the better

22 thing to do is to take out the language in this order that

23 relates to 365, other than to say a separate order will be

24 issued relative to a 365 assumption.

25          MR. HUCKINS: You actually jumped ahead of where

1   we were going.  We were going to alert you of the fact that

2   at the tail end of the proposed order, there is language

3   dealing with the proposed assumption of leases and

4   executory contracts.  But yeah, we can deal with that

5   separately.

6         THE COURT: Okay.  Well let me just -- okay

7   actually it looks like 15 and 16 are -- and 17 all seem to

8   relate to that, and 18 and 19 and 20.  Okay, look, Mr.

9   Goodsell, what kind of evidence do you want to put on the

10  record.  Leaving aside the language of the order, I'm

11  satisfied from the history of the case, the record, the

12  involvement of Burlingame, you know, the extensive hearing

13  on so many matters, and now with the amended Robert Judson

14  declaration that Burlingame has made the case for a 363(m)

15  finding, I'm prepared to sign an order that approves the

16  sale to Burlingame, conditioned upon all the things we

17  talked about.  It can't be this order for the reasons we

18  stated.  I'll yield to Mr. Greger on the language of

19  paragraph 5, but we've got to fix and deal with

20  paragraph -- excuse me, 5 in the preamble -- but 5(f) needs

21  to get dealt with, and then all the paragraphs that deal

22  with the 365 stuff.  That's from 15 to the end, 15 to 20

23  rather, need to get dealt it some way.

24        MR. GOODSELL: Your Honor, I have nothing further

25  to add beyond the record that the Court already has.  I

1  think we've established various parts of this over the past

2  several months.  The final order needs to be acceptable in

3  my view to Burlingame.  We've agreed to as much in the

4  Asset Purchase Agreement, because they're the ones who have

5  to be able to run with it.  And it's got to satisfy, you

6  know, their lender, their title company, whatever else.

7  And so I have no changes --

8          THE COURT: Mr. Huckins, do I assume that things

9  like the financing and so on are still -- depend upon the

10  order early on?

11          MR. HUCKINS: Yes.

12          THE COURT: And so it's important to your client

13  to get the order to start in motion that aspect.

14          MR. HUCKINS: Correct.

15          THE COURT: And yet -- okay.  So --

16          MR. HUCKINS: And one of the things as we're

17  modifying the sale order to essentially remove the language

18  dealing with Section 365, we may need to make a small

19  modification to the Asset Purchase Agreement to make that

20  condition at closing, that there would be entry of an order

21  essentially approving the assumption and assignment of the

22  leases and executory contracts as necessary.

23          THE COURT: Right.

24          MR. GOODSELL: it might be cleaner to do that just

25  with an addendum.

1          MR. HUCKINS: Yeah.  I mean we can do that.  But

2     that's one of the things that we'll have to modify, both in

3     terms of the order and the Asset Purchase Agreement.

4          THE COURT: Well, what happens if we –- if I

5     approve the sale, sign an order, and then for some reason,

6     there's an inability to assume a contract?

7          MR. HUCKINS: Well then the transaction won't

8     close, and –- I don't anticipate that.  The contracts that

9     are being contemplated, Your Honor, I mean the only lease I

10    believe is a copier lease.

11         THE COURT: Okay.  They're minimal stuff.  I mean

12    it isn't –- you'd have a bigger problem if this were, say,

13    a lease holding.

14         MR. HUCKINS: And we specifically recognize that,

15    you know, we need to enter into employment arrangements,

16    but those would not be –-

17         THE COURT: Right.  But that's a new deal.  That's

18    a new contract.

19         MR. HUCKINS: Yeah, exactly.

20         THE COURT: No, I understand that there are any

21    number of things that can give your client an out under the

22    agreement.  I'm not trying to trap them.  I'm just trying

23    to think about, is it really necessary to have an order

24    now, rather than an order that parallels the 365.  You told

25    me it is, and I'll accept that.  It is.

1           MR. HUCKINS: Yeah, we would like to get this out

2  of the way, and then deal with the 365 issue later.

3           THE COURT: Okay.  Do you need anything else on

4  the record from the buyer's point of view?

5           MR. HUCKINS: I think the Court has made its good

6  faith finding and determination that Burlingame is entitled

7  to the protections of 363(m); is that correct?

8           THE COURT: Right.  Right.

9           MR. HUCKINS: Okay.  I guess I would like to hear,

10  for purposes –- and we've talked to Debtor's counsel about

11  this –- that notwithstanding the fact that we don't have an

12  executed Asset Purchase Agreement, the Debtor has in fact

13  agreed to this form of Asset Purchase Agreement; is that

14  correct?

15           MR. GOODSELL: Yes.

16           MR. HUCKINS: Okay.

17           THE COURT: Okay.  That's on the record.

18           MR. HUCKINS: Could I get one clarification, just

19  so that we know, Sean Azad, can you spell that, so that we

20  have that.

21           MR. GOODSELL: Certainly.  S-e-a-n, and A-z-a-d.

22           MR. HUCKINS: Okay.  I guess the last procedural

23  matter, Your Honor, is that –- and I think Mr. Goodsell has

24  alluded to this, or at least we discussed it, is that I

25  think it would be appropriate to have a continued

1  telephonic status conference perhaps on Tuesday to make

2  sure that the Asset Purchase Agreement gets executed, is

3  filed with the Court, and that we have no further issues in

4  that regard.

5         THE COURT: I think we'll have to move it to

6  Wednesday if that's all right with you.  Is that okay?

7         MR. HUCKINS: Yeah, it would have to be in the

8  afternoon, if we do so.  I'm tied up in the morning.

9         THE COURT: That's all right.  Can it be late

10  afternoon?

11         MR. HUCKINS: Yeah, that's fine.

12         THE COURT: 3:00 o'clock or so?  We have Chapter

13  13's in the earlier day.

14         MR. HUCKINS: Yeah, that's fine.

15         THE COURT: We probably won't need it.  I mean if

16  you get it all taken care of, we won't need a status

17  conference, right?

18         MR. HUCKINS: We may need it anyway.

19         THE COURT: (Laughing).  Oh no!

20         MR. GOODSELL: Your Honor, let me put it this way.

21  If for some reason, Mr. Azad doesn't sign and if for some

22  reason, we can't find someone that Mr. Azad can engage to

23  do that, then we might end up with your suggestion with

24  respect to Mr. Bradlow.  But --

25         THE COURT: Okay.

1            MR. GOODSELL:  -- that's not the goal.

2            THE COURT:  We have a Chapter 13 calendar on the

3    11th at 1:00, 1:30 now.  So why don't we put this on at 3:30

4    on Wednesday afternoon, if necessary.  Okay?

5            MR. GOODSELL: Do you need somebody to contact

6    your clerk --

7            THE COURT: I mean if we have all of you appearing

8    by phone, we can do a court call, or we can --

9            MR. GOODSELL: No, I mean do you want us to give

10   you a heads up some time in the morning as to whether we

11   would proceed or not proceed?

12           THE COURT: Oh, well, let Ms. Parada know, if you

13   don't need the conference, that's all.

14           MR. GOODSELL: Okay.

15           MR. HUCKINS: Your Honor, I guess I would like

16   to -- while we're definitely hopeful and anticipate that

17   Mr. Azad will sign, I would like, irrespective, to have the

18   continued conference at 3:30.  I think what we need --

19           MR. GOODSELL: That's fine then.

20           MR. HUCKINS: What we need to do is we need to

21   address essentially the issues of consummating the

22   transaction and closing, and how we're going to

23   essentially -- who at the Debtor is going to help

24   facilitate and what Mr. Bradlow's continued role is, or

25   whomever, but --

1          THE COURT: Okay.

2          MR. HUCKINS:  -- I mean the focus is to get the

3  pieces in place that are necessary to consummate the

4  transaction.

5          MR. GOODSELL: That's fine.  I don't have a

6  problem with that.

7          THE COURT: Well, you know, Mr. Huckins, we're

8  back to the old story, if the current management of the

9  Debtor decides they don't want to be cooperative, there are

10  a couple of ways to fix that problem, that's all.

11          MR. HUCKINS: Understood.

12          THE COURT: I think if we have a done deal, in a

13  sense, I don't mean a closed sale, I mean an approved sale,

14  and your client is out getting the financing and doing all

15  the interviews and everything else, maybe I do have the

16  ability to ask Mr. Bradlow to step in and supervise certain

17  aspects.  I don't think that's quite the same as a trustee.

18  But again, let's -- we heard a statement by counsel that

19  Ms. Koelling is prepared to cooperate and so let's take her

20  at her word, at this point.  And if, you know, again, it's

21  not for me to say whether that will happen or not, but I'll

22  take counsel's statement that that's the instructions.

23          MR. GOODSELL: Your Honor, I'd also like to point

24  out that in the status statement that Mr. Healy filed on

25  Wednesday, there's also a letter from Mr. Huckins to me

1  dated --

2       MR. HUCKINS: It's actually Mr. Uhrtman

3  (Phonetic), but --

4       MR. GOODSELL: Oh, Mr. Uhrtman, sorry.  -- which

5  has the closing schedule and events detailed out, and one

6  of the things I had asked of Mr. Huckins was, tell me what

7  you want from the Debtor and when you want it, and then

8  that makes it easier for us to deal with these things as

9  they've been identified.  And so I think that's going to

10 make things a little bit easier in terms of who's doing

11 what and what's done by when, as opposed to the generic,

12 you know, we expect your help, because that's certainly

13 open to different interpretations, but saying we expect you

14 to provide us with the information we need to file the

15 application by such and such a date, that's pretty

16 specific.

17       THE COURT: Okay.  Well, I've got the letter.

18 That is part of the submission.  Again, it's not one of

19 those things that I decided I needed to study at this

20 point, but --

21       MR. GOODSELL: No, it's only going to be important

22 in the future.

23    (Laughter.)

24       THE COURT: Maybe not.  Okay.  Well, we have a

25 status conference on the 11th, but I'll take this

opportunity to congratulate Burlingame and Mr. and Mrs.
Judson for their persistence in trying to get to this
point, and the bankruptcy estate at least will be better
served if this sale closes, so congratulations and let's
hope it does, and I will be prepared to talk to you again.
Congratulations to counsel as well, on both sides.  And,
Mr. Bradlow, I thank you for your unusual role that you
were asked to play here, and Mr. Goodsell, you and Mr.
Healy, I know you've been in a difficult situation, and
you've carried it out, so let's hope it happens.  I will
talk to you all on Wednesday at 3:30.

MR. HUCKINS: Your Honor --

THE COURT:  And for the record, I'm orally
approving the sale, making the finding, the good faith
finding under 363(m), and subject only to working out the
details of the order, I'm good to go.  Do you want me to do
more?

MR. HUCKINS: No.  There's just one last
housekeeping matter.  One of the things that has been
deferred until we got to this point was meetings with the
teachers and the principals.

THE COURT: Right.

MR. HUCKINS: At this juncture, now that we've got
an approved sale, may Burlingame contact the principals,
and, you know, begin to engage in discussions with the

1  teachers so that we can do the necessary things to close

2  this transaction?

3          THE COURT: Do you have a concern with that, Mr.

4  Goodsell?

5          MR. GOODSELL: I don't have a problem with

6  Burlingame contacting the principals. We've already agreed

7  to that previously. In terms of their contacting the

8  teachers, I don't know -- I haven't thought about how I

9  would do that. I don't know that I want to give Burlingame

10 their home addresses and personal telephone numbers. At

11 the same time, we're still running a business here.

12 Burlingame hasn't purchased it. I wouldn't want them, you

13 know, taking the teachers all out for a week to, you know,

14 Las Vegas. I mean anything that's reasonable we'll do, but

15 the primary responsibility I think of Kids Connection is --

16 at this point is to keep the business operating, and it has

17 a secondary responsibility which is to get this sale

18 accomplished. And I'll do whatever I can that's reasonable

19 to accommodate Burlingame, but I mean they have to realize

20 also that we can't just have a teacher meeting on Tuesday

21 during school hours --

22          THE COURT: Well, let me say this. One of the

23 things that -- there have been a lot of unusual things in

24 this case, but one of the unusual things about it is, the

25 business itself has never been the subject, to my

1  knowledge, of a single hearing in this case.  Normally in a

2  Chapter 11 of a business, I get a little more familiar with

3  the business, and we have day-to-day operating issues, and

4  this is the most detached I think I ever have been from an

5  operating Chapter 11, because the school obviously is

6  operating capably and the children are getting their

7  teaching.

8          MR. GOODSELL: And a profit from month to month.

9          THE COURT: And that's excellent.  So that's just

10 an observation, but I -- you know, people read about all

11 these big cases filing in Delaware and New York, and

12 they'll say to me, I bet you're busy, and I am busy, but

13 I'll say, I've got unusual cases like a K through 6 school

14 that I know nothing about.

15          Mr. Bradlow, I'll ask you again to continue your

16 good offices here and your good service and be the broker

17 if there's a disagreement between Burlingame and the Debtor

18 about what Mr. Goodsell and Mr. Huckins just talked about.

19 And if necessary, I guess I'll take the call if there is a

20 disagreement.  I'm assuming that Burlingame will take your

21 comments to heart and won't do anything that's disruptive,

22 but if there's an issue, I'll ask Mr. Bradlow first to be

23 the first responder here, and I'll be the second one.

24 Okay?

25          MR. BRADLOW: Yes, Your Honor.

1          MR. GOODSELL: I think Mr. Bradlow has shown a

2  deft touch in terms of understanding both sides of where

3  people are, and --

4          THE COURT: You know, one of these days he's going

5  to ask to be paid for all this, but --

6          MR. GOODSELL: Hopefully, he'll do that deftly

7  too.

8    (Laughter.)

9          THE COURT: For calendaring purposes, I'm going to

10  take Kids Connection versus Burlingame, A.P. 08-3049 and

11  just take it off calendar for now.  If for some reason,

12  this sale doesn't happen and that adversary proceeding

13  needs to be revived, it can be revived, but there's no

14  point in trailing on the calendar.  So the minutes should

15  simply reflect that the sale is approved with an order to

16  be submitted.

17          MR. GREGER: Your Honor, does that also mean that

18  any procedural dates in the adversary proceeding are

19  totaled, are stayed?

20          THE COURT: Everything is -- it's the back burner

21  behind the back burner.

22          MR. GREGER: I just wanted the record clear.

23          THE COURT: Not even on the stove; it's down in

24  the oven.  Okay?  Anything else?

25          MR. GOODSELL: I think that's fine.

1          THE COURT: All right.  Thank you very much.

2          MR. BRADLOW: Thank you, Your Honor.

3          ALL COUNSEL: Thank you, Your Honor.

4          THE COURT: All right.  Have a nice weekend

5    everybody.

6        (Whereupon, the proceedings are concluded at 12:04

7    p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6                  CERTIFICATE OF TRANSCRIBER

7

8

9          I certify that the foregoing is a correct

10   transcript from the digital sound recording of the

11   proceedings in the above-entitled matter.

12

13

14   DATED: June 11, 2009

15

16                        By: /S/ Jo McCall

17

18

19

20

21

22

23

24

25