1      UNITED STATES BANKRUPTCY COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3      (SAN FRANCISCO DIVISION)

4

5  In re:

6  KIDS CONNECTION, INC.,              Case No. 08-30026-DM

7                                      Chapter 11

8                                      San Francisco,California
                                       February 20, 2009
9                                      10:34 a.m.
            Debtor.
10  _____/

11

12                  TRANSCRIPT OF PROCEEDINGS
        1.  MOTION TO SELL FREE AND CLEAR OF LIENS AND
            INTERESTS IN REAL AND PERSONAL PROPERTY
13          (BURLINGAME CAPITAL PARTNERS,II, L.P.)
        2. MOTION TO SELL FREE AND CLEAR OF LIENS AND
14      INTERESTS IN REAL AND PERSONAL PROPERTY AND VALUE
        SECURED CLAIMS (NOBEL LEARNING COMMUNITIES, INC.)
15                  3.  STATUS CONFERENCE

16
    KIDS CONNECTION, INC.,
17
            Plaintiff,
18
        v.                          A.P. No. 08-3049
19
    BURLINGAME CAPITAL PARTNERS II, L.P.,
20
            Defendant.
21  _____/

22

23                  STATUS CONFERENCE

        BEFORE THE HONORABLE DENNIS MONTALI
24          UNITED STATES BANKRUPTCY JUDGE

25

```
 1  APPEARANCES:

 2
    For Burlingame Capital:    ALLEN, MATKINS, LECK, GAMBLE &
 3                             MALLORY, LLP
                               BY: MICHAEL GREGER, ESQ.
 4                             1900 Main Street, 5th Floor
                               Irvine, California 92614
 5
                                      -and-
 6
                               ALLEN, MATKINS, LECK, GAMBLE &
 7                             MALLORY, LLP
                               BY: WILLIAM W. HUCKINS, ESQ.
 8                             Three Embarcadero Center, 12th
                               Floor
 9                             San Francisco, California 94111

10

11  For the Debtor:            CAMPEAU GOODSELL SMITH, L.C.
                               BY: SCOTT GOODSELL, ESQ.
12                             440 North First Street, Suite 100
                               San Jose, California 95112
13

14
    For City National:         JEFFER, MANGELS, BUTLER & MARMARO
15                             BY: RICHARD A. ROGAN, ESQ.
                               Two Embarcadero Center, 5th Floor
16                             San Francisco, California 94111

17
    For Linda Koelling:        GOLDBERG, STINNETT, DAVIS AND
18                             LINCHEY
                               BY: KATHERINE D. RAY, ESQ.
19                             44 Montgomery Street, #2900
                               San Francisco, California 94104
20

21  The Examiner:              DAVID A. BRADLOW
                               3947 23RD Street
22                             San Francisco, California 94114

23
    Also Present:              LEE BOHS
24                             JAN JUDSON
                               BOB JUDSON
25                             (Appearing Telephonically)
```

1  APPEARANCES (CONTINUED):

2

   Court Recorder:          JONEITA HAMMONDS
3                           UNITED STATES BANKRUPTCY COURT
                            235 Pine Street
4                           San Francisco, California 94104

5

6  Transcription Service:   Jo McCall
                            Electronic Court
7                           Recording/Transcribing
                            2868 E. Clifton Court
8                           Gilbert, Arizona 85295
                            Telephone: (480)361-3790

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        P R O C E E D I N G S

2  February 20, 2009                    10:34 a.m.

3                    ––—oOo—––

4        THE CLERK: Matter of <u>Kids Connection, Inc.</u>

5        THE COURT: Good afternoon -- or good morning.

6        MR. GOODSELL: Good morning.  It probably has been

7  a long morning.  Scott Goodsell for the Debtor.

8        THE COURT: Mr. Huckins?

9        MR. HUCKINS: Good morning, Your Honor, Bill

10  Huckins and Mike Greger on behalf of Burlingame Capital

11  Partners.

12        MR. GREGER: Good morning, Your Honor.

13        THE COURT: Good morning.  Mr. Bradlow?

14        MR. BRADLOW: Good morning, Your Honor, David

15  Bradlow, the examiner.

16        THE COURT: Ms. Ray?

17        MS. RAY: Good morning, Your Honor, Katherine Ray,

18  for Linda Koelling.

19        THE COURT: Good morning.  Mr. Rogan?

20        MR. ROGAN: Good morning, Your Honor, Richard

21  Rogan appearing for City National Bank.

22        THE COURT: And we have telephone appearances?

23        MR. BOHS: Yes.  Good morning, Your Honor.  This

24  is Lees Bohs with Nobel Learning.

25        MR. JUDSON: Good morning, Your Honor.  It's Bob

1  Judson and Jan Judson from Burlingame Capital.

2           THE COURT: All right.  Good morning.

3           For all of you on the phone, I'm treating it as

4  if you're simply listening in by phone.

5           Well, what's the deal?  Do we have something --

6  some resolution, Mr. Goodsell?  Is that what I'm informed?

7           MR. GOODSELL: Yes.  I believe so.  The Debtor has

8  received three or four different offers.

9           THE COURT: Right.  I've seen four now.  I counted

10  four in the papers.

11           MR. GOODSELL: Right.  And of those, based on the

12  math, it appears that the Burlingame offer is superior.

13  One concern that we have had was, whether we could get a

14  hard closed-by date for that transaction, and there were

15  other concerns about provisions in the Asset Purchase

16  Agreement as drafted by Burlingame.  We've had a couple of

17  lengthy conference calls with Mr. Bradlow and Burlingame's

18  counsel, and I'm told, I believe, that the concerns that we

19  had with the Asset Purchase Agreement, about certain

20  provisions and so forth, are going to be resolved.

21           There are additional schedules that need to be

22  completed.  In some cases, it appears that the schedules of

23  information provided would be identical to Nobel.  Mr.

24  Huckins has advised me there are a couple that will require

25  different or more information.  So we don't have a final

1  version of an Asset Purchase Agreement today.  We could

2  very well have that some time next week.  Given that, it's

3  my -- the Debtor's recommendation, my recommendation that

4  we should put this over for a short period of time.  I know

5  that Mr. Huckins' schedule is such that it would have to be

6  after March 3rd, as he's going to be gone for a certain

7  period of time, and I think that's where we stand on that

8  sale.

9         Now, if the Court wants further detail, I'm happy

10  to give it, but I don't know --

11         THE COURT: Well, let me ask you this.  The

12  Debtor, through you, but through its officers directing

13  you, is in effect saying go with the Burlingame deal.

14         MR. GOODSELL: Yes.  Although the Debtor has not

15  seen some of the things that I got this morning before the

16  hearing, so --

17         THE COURT: Well again, leaving aside the nitty,

18  the details --

19         MR. GOODSELL: Yes.

20         THE COURT: It was unclear Mr. Healy -- under the

21  time pressures I've had put on him -- he filed the motion

22  for the Burlingame.  The next day he filed one for Nobel.

23  The next thing I know he's filing another one that he got.

24  But it was just filed; it wasn't -- it didn't purport to be

25  a motion by the Debtor.  So let me ask you this question.

1  If the details between –- of the APA between Kids

2  Connection and Burlingame get hammered out, do you believe

3  procedurally we're ready to have my approval at a continued

4  hearing?  We don't need to notice this again, I don't

5  think.

6          MR. GOODSELL: No, I don't think so.

7          THE COURT: It's been noticed.

8          MR. GOODSELL: Well, that's one of the reasons

9  that we had noticed the Nobel one as well is we wanted to

10 make sure that everything that we had in that time frame,

11 creditors knew about.

12         THE COURT: No, I'm –- listen, I understand, and

13 this is the first time that I can recall in this case that

14 your side and the Burlingame side appear to have laid down

15 your arms and tried to put something together consensually,

16 which is good news from one point of view.  I'm sure Mr.

17 Rogan would agree.  It may not be what Nobel wants to hear

18 or other bidders want to hear, but the point is that in

19 terms of that issue, that's progress.  So I guess I'll put

20 the question back to you, the record and parties in

21 interest need to see the final deal, but they know the

22 structure of the deal.  I take it the details you're

23 working out are not of any major substance at this point,

24 and that if I approve it on March 3rd, or some day around

25 then, and then you said you're looking for a close-by date.

1  Is there a close-by date that's been agreed to yet?

2          MR. GOODSELL: Sort of.

3      (Laughter.)

4          MR. GOODSELL: I know you hate that answer from

5  me.  The issue was, what is a hard date by which this could

6  close, and the gating item is how long would -- well, the

7  gating items would include, but it turned out the most

8  significant one is, how long would it take the State to

9  approve a license.  And I have a draft letter here from Mr.

10 Huckins -- I presume, Mr. Huckins -- that says that based

11 on their communication with the State, that there is a 60-

12 day license approval period.

13         THE COURT: Okay.  That's different from what we

14 had heard before.  But --

15         MR. GOODSELL: I had operated -- I think Mr. Bohs

16 had suggested that it was a 30-day period.

17         THE COURT: Right.

18         MR. GOODSELL: I personally am relying on what

19 either of them have told me.  I have not figured that out.

20 I have not made that call myself.  There is -- so that

21 becomes the gating item.  It can't happen before the

22 application is filed and so we have to figure out how much

23 time to put the application together, file the application,

24 and then at least 60 days.

25             Now, that will create some issues of its own, one

1   of which is, you know, the Debtor will cooperate to get

2   that application on file, but we've got a whole list of

3   dates in this letter, which is people will perform on these

4   dates, and that will give us a hard close-by date of, like,

5   around May 7th.  We already know that that date is going to

6   slip a little bit, just based on the fact that we're

7   working off the sale order date that could be, you know,

8   March 4th or 5th or 10th or whatever it may be.

9           THE COURT: Right.

10          MR. GOODSELL: So we have the concept of when the

11  hard date would be, but we don't have that date hammered

12  down, because it's dependent on other timing.

13          THE COURT: Well, tell me what you want, and then

14  I'll see if everybody else is in agreement.

15          MR. GOODSELL: Well, my recommendation on the

16  Debtor's behalf is that this hearing be put to a date

17  promptly after March 3rd.  Mr. Huckins, you're --

18          MR. HUCKINS: I'm out through the 2nd, correct.  So

19  it would have to be after the 3rd.

20          MR. GOODSELL: So any date after that would be

21  fine.  The issues that remain -- at that point, prior to

22  that time, whenever you want prior to that time, we'll have

23  a final version of the APA, Asset Purchase Agreement,

24  filed.  Now --

25          THE COURT: Well, I think from -- I mean obviously

1 my responsibility is to review it, but I think, more

2 importantly, any party who has a right to object ought to

3 have an opportunity to be heard on the deal.

4          MR. GOODSELL: Sure.

5          THE COURT: I mean I don't know whether anybody

6 will object, but I can't deny them the right to do that, so

7 I don't want to put you under unreasonable time limits.  I

8 can find a hearing date and you tell me how many days prior

9 to that you can file it.  I do have one question, though,

10 Mr. Huckins, I'm looking at the offer comparison that you

11 put together in your objection declaration, and you

12 analyzed the Burlingame, the Nobel, and the Apple Tree

13 offers.  I guess you didn't at that time have this other

14 one that came in from this other company that -- since you

15 prepared that, I guess you've become aware, haven't you,

16 that Ms. Koelling has filed a claim, and she, I gather, is

17 claiming some administrative priority?

18          MR. HUCKINS: We're aware of a declaration filed

19 by Ms. Koelling.  At this point, there is no claim that has

20 technically been filed, so --

21          THE COURT: Well, okay.  I don't want to get into

22 an argument with her counsel or anybody else about that.

23 The point is, if she is purporting to assert a right to get

24 some money and if she's entitled to any administrative

25 priority, that will cut into the percentage of recovery

1   that you project to creditors. Don't you agree?

2         MR. HUCKINS: If in fact she's entitled to a

3   priority in that, yes.

4         THE COURT: I thought -- perhaps I'm forgetting

5   it -- I thought I saw the that she had filed it. Ms. Ray,

6   has your client filed a claim?

7         MS. RAY: She filed a declaration.

8         THE COURT: Pardon?

9         MS. RAY: She filed a declaration asserting the

10   amount of the claim, the basis, the employment agreement

11   and security agreement.

12         THE COURT: Right. Well, do you contend that

13   that's a Proof of Claim?

14         MS. RAY: No, it's a declaration, Your Honor.

15         THE COURT: Okay. Okay, well, look, I don't have

16   to make a decision today. Today we have essentially the

17   Debtor saying we're going to proceed with the Burlingame

18   proposal. That should render the objections that

19   Burlingame has interposed to the other sale as, at least

20   off the table for now. I don't think we have to talk about

21   things like backups. We can deal with -- I mean, to me,

22   this case is too complex and the positions of various

23   bidders too different to sort of say, if buyer A doesn't

24   close, the seller can sell to buyer B. This isn't like,

25   you know, apples to apples. And so on the assumption that

1   I would approve the sale to Burlingame, I'll do so assuming

2   that Burlingame intends to close escrow.

3         If for some reason, it doesn't, then I guess

4   we'll have to revisit where do we go from here, and not try

5   to cross that bridge.  Do you agree with that?

6         MR. GOODSELL: I'm not sure what you just said.

7         THE COURT: Well, what I'm saying --

8         MR. GOODSELL: Are we approving a sale today or

9   are we --

10        THE COURT: No, no, no.

11        MR. GOODSELL: All right.

12        THE COURT:  What I'm saying is lots of times when

13   you have competing bidders, the Court is asked to approve

14   the sale to the high bidder but also to approve a backup to

15   the next high bidder, so that if the high bidder backs out

16   or fails to perform, without coming back and starting all

17   over again, the seller can sell to the back-up bidder.

18   Here, I don't think it's appropriate for me to say Nobel or

19   anybody else is a back-up bidder.  I think because of the

20   very complexities, the objections that Burlingame has

21   interposed, the valuation issues and the legal issues,

22   whether you like the Burlingame deal or not, it's simple

23   from a bankruptcy point of view to implement.

24        And so, I would -- if someone persuades me to

25   disapprove the Burlingame sale or if I approve the

1  Burlingame sale and Burlingame doesn't close for some

2  reason, then I think the estate has to revisit the question

3  of where do we go from here.  But we don't have to deal

4  with that today.  So again, if anyone wants to be heard in

5  opposition to the procedure I'm outlining, please speak up.

6  But let me -- before you do, let me just say again, I will

7  give Mr. Goodsell a date in the first week of March, and

8  I'll give him a date prior to that hearing date to file and

9  serve on interested parties the final document, and at that

10  hearing, if there's no objections, it would be my

11  expectation that I would approve the sale.

12        MR. GOODSELL: I do have one other item for that

13  hearing, and that is, the Debtor has not itself conducted

14  any discovery regarding Burlingame's ability to perform.

15  We haven't contacted the folks who are putting up the new

16  equity money.

17        THE COURT: But Mr. Bradlow has.

18        MR. GOODSELL: Mr. Bradlow has.

19        THE COURT: And I've relied on him to be a neutral

20  party, and I take it -- I mean you're free to --

21        MR. GOODSELL: Right.  I just -- let me complete

22  because I --

23        THE COURT: Okay.  Sorry.

24        MR. GOODSELL: And also I've certainly not spoken

25  with their banker, so I'm simply looking at the bank

1   commitment letter.  If the Court will require a declaration

2   or other proof of Burlingame's ability to perform, I need

3   to know now, and then I need to get Mr. Huckins to prepare

4   that.

5          THE COURT: This case doesn't fit a mold that --

6   let me try this -- I'm going to break the mold when we

7   close this sale so we don't repeat it.  I can't remember

8   when I've had to call upon a neutral party like Mr. Bradlow

9   to do the mediation that's occurred, but if Mr. Bradlow

10  sits there as he has sat before and says, it looks like a

11  good deal and it looks like they can perform, that's good

12  enough for me on this record.  If somebody wants to

13  question it, I guess I'll decide whether that can be

14  tested, but I don't need anything from the Debtor at this

15  point.

16         Mr. Bradlow, you're still of that opinion, aren't

17  you?  You haven't changed your mind, right?

18         MR. BRADLOW: No.  I mean, you know, let's take

19  the two components.  With regard to the equity component,

20  I've spoken to the investors of the previous group, there

21  were two groups, and I spoke to the original group twice,

22  and I've spoken to the additional investor that's in the

23  second group.  All of them have confirmed the amounts.  All

24  of them have reiterated their intentions to proceed.  I

25  have not looked at personal financial statements, but I

1  don't have any reason to believe that these investors are

2  not able to perform.

3       With regard to the bank's commitment letter,

4  there are conditions.  I have spoken to the bank and have

5  been informed that those conditions are not etched in

6  stone, that they do have some flexibility, and if for

7  whatever reason, there needs to be modifications, they will

8  certainly consider those.  Is it absolutely a cast-iron

9  commitment?  No, it's not.  But I still feel that this is

10 the best deal that's on the table, and that it's no

11 different from any other deals that I've gone into, where

12 you enter into a contract, and you hope that the buyer

13 performs, and usually when they've invested this amount of

14 time and energy and money and legal fees, they usually do.

15 You know, obviously nobody can guarantee that the bank will

16 finally pony up the money, but I feel reasonably confident

17 that they will.

18       THE COURT: Well, that's on our record.  That's

19 the examiner's recommendation, and, Mr. Goodsell, again,

20 I'm not foreclosing the right of a party in interest who

21 wants to put in issue Burlingame's ability to perform, but

22 I'm not independently going to raise it, and that's -- I'm

23 satisfied with that.  Again, I've stuck with Mr. Bradlow in

24 this examiner role, and refused repeatedly requests to

25 appoint a trustee, in part because I have confidence in his

1  ability to make that analysis, so I'm fine with it.

2          MR. GOODSELL: That's fine.

3          THE COURT: Okay.

4          MR. GOODSELL: We've had the prior occasion where

5  you wanted more evidence, and that was --

6          THE COURT: Right.  But a lot has happened since

7  then.  A lot has been provided to Mr. Bradlow.  So -- does

8  anybody want to speak to the procedure that I've suggested

9  I'll follow?

10          MR. HUCKINS: Your Honor?

11          THE COURT: Mr. Huckins.

12          MR. HUCKINS: Yes.  I just want to make -- I guess

13  two things clear.  So at the next hearing, we're going to

14  proceed with a motion to approve the sale of the Kids

15  Connection assets to Burlingame.

16          THE COURT: I mean it'll be the hearing on the

17  motion.

18          MR. HUCKINS: Correct.

19          THE COURT: I mean if your client backs out next

20  week, obviously there'll be nothing to hear.  But on the

21  assumption that you're going to do what Mr. Goodsell said,

22  you're going to close the loops on the deal, yeah, that'll

23  be the intention.  And if no one objects, tentatively I

24  would intend to approve it.

25          MR. HUCKINS: Okay.  And the second thing that I

 1  just want to get out on the table right now is that

 2  Burlingame will definitely want a 363(m) order, a good

 3  faith order, from the Court and we would want, for purposes

 4  of closing the transaction, the broadest possible order

 5  that the Court can approve, pursuant to --

 6          THE COURT: Well, look at our model sale order --

 7          MR. HUCKINS: I understand.

 8          THE COURT:  -- look at my published requirements

 9  for a 363(m).  I won't change the rules on you.

10          MR. HUCKINS: Okay.

11          THE COURT: You're stuck with those.  I've refused

12  363(m) findings in other cases where people are unwilling

13  or unable to read what I've laid out very simply to do to

14  get it.

15          MR. HUCKINS: I understand.  I just wanted to make

16  that very clear because that's one of the things that will

17  be part of the motion.

18          THE COURT: Yeah, no, that's fine.

19          MR. HUCKINS: Okay.

20          THE COURT: But you're familiar with my posted

21  proceedings, right?

22          MR. HUCKINS: I am.

23          THE COURT: Okay.

24          MR. HUCKINS: Yes.

25          THE COURT: All right.  Well, I don't hear anybody

1 saying anything, so Ms. Parada, can we have a –- is the 5th

2 or 6th available?

3         THE CLERK: Let's do March 5th at 10:00 o'clock?

4         THE COURT: Does that give you enough time, Mr.

5 Huckins?

6         MR. HUCKINS: Yeah, that should be fine.

7         THE COURT: And you say you're away until the 3rd?

8         MR. HUCKINS: I'm way until the 3rd, 2/27 to 3/2 is

9 my blackout.

10         THE COURT: Well, Mr. Goodsell, do you think you

11 can work out the details between now and next week, the

12 deal, the term sheets, or the APA?

13         MR. GOODSELL: Well, let me –- when, Your Honor,

14 would you like to see pleadings filed and served on folks

15 and if –-

16         THE COURT: Well, how about the 3rd?  Would that be

17 too late?

18         MR. GOODSELL: I suspect that that would be fine.

19 The 27th is a Friday, Mr. Huckins?

20         THE COURT: Yeah.

21         MR. HUCKINS: Correct.

22         THE COURT: A week from today.

23         MR. GOODSELL: So as long as we get it done by

24 Thursday, that shouldn't really be a problem.

25         THE COURT: Well, let's think about who needs to

1 know about this.  Mr. Rogan, obviously, he wants to get his

2 bank paid.

3          MR. GOODSELL: Right.

4          THE COURT: Mr. Huckins has been the most -- for

5 his client, has been the most outspoken creditor in the

6 case.  Now he's back to his role as purchaser.  I guess the

7 question is -- Mr. Bradlow, of course, he's just being what

8 he's being -- he's aware of what's going on.  Ms. Koelling,

9 in her corporate capacity, will know what the deal is.  If

10 she chooses to assert something in her individual capacity,

11 I guess that's her prerogative.  So the question is, who

12 else needs to know about this?  I mean, help me.  Is there

13 any other party that has been active -- Brady is out,

14 because Burlingame has taken her position.  Mr. Rogan, what

15 do you --

16          MR. ROGAN: Well, I would think anybody whose lien

17 might be affected, so there is a second lien --

18          THE COURT: I think we already have a consent on

19 that one; don't we?

20          MR. GOODSELL: I think so, but it's going to be

21 paid out of the proceeds anyway, so it's hard to see what

22 their -- how it will be impacted.

23          THE COURT: Right.  I mean, Mr. Huckins, am I

24 still -- is it still correct, per your analysis here, when

25 you laid out your comparison, you anticipate the bank and

1 the person –- I've forgotten his name –- in second position

2 getting paid.

3          MR. HUCKINS: Mr. Fitpatrick.

4          THE COURT: Right?

5          MR. HUCKINS: Correct.

6          THE COURT: And you're in third position, and

7 you're subordinating.

8          MR. HUCKINS: Correct.

9          THE COURT: Right?

10         MR. HUCKINS: Yes.

11         THE COURT: So, Mr. Huckins, isn't that consistent

12 with your understanding?

13         MR. HUCKINS: It is consistent.  I would echo Mr.

14 Rogan's comments, that it would be our intent to notice

15 this out to any lien holder that might be affected by the

16 motion, all the creditors, and anyone requesting special

17 notice.  We want to be scrupulous in terms of the

18 requirements to obtain a sale free and clear order.

19         THE COURT: Well, but the motion has been noticed

20 out, right?

21         MR. GOODSELL: Correct.

22         MR. ROGAN: Right.

23         THE COURT: And so all –- and in fact the motion

24 had a prior –- didn't the motion have the prior agreement?

25         MR. GOODSELL: It did.

1    THE COURT: I mean if there's no substantive

2  change in the agreement, I don't think it's necessary to go

3  at that again, Mr. Huckins.  My point is, it should be

4  filed.  I mean I understand you want -- you want the

5  finding under 363(m).  You'll get it if you comply with my

6  requirements, and the order -- I mean I don't want you to

7  be misled.  The judges of our court have tried to simplify

8  the sale orders for a good reason, and if I sign an order

9  that says the sale to Burlingame, per the APA, is approved,

10  what could be broader?  If you want 500 findings, you know,

11  that's where we have the problem, and I don't mind going to

12  say, and out of the proceeds, the bank can be paid and the

13  second lien holder can be paid, and recitals about what

14  happens to your lien, but in effect, your lien disappears.

15    MR. HUCKINS: Understood.  Your Honor, I think the

16  point that I was trying to make is simply that we will need

17  to review the prior moving papers to satisfy ourselves that

18  all the notice requirements have been met, and if we

19  satisfy ourselves that they have been met, and we don't

20  have a question with it, then it may not be necessary to

21  reserve everything.  But if it is, then we'll undertake

22  that obligation to make sure that happens.

23    THE COURT: Well, okay.  I mean I understand what

24  you don't want to have happen, is somebody come out of the

25  woodwork some day and say I didn't know about it.

1      MR. HUCKINS: M-hm.

2      THE COURT: I have the motion that was filed by

3  the Debtor through Mr. Healy.  I don't recall if I have --

4  that was filed around February 5th.  I'm just looking to see

5  if I have a Proof of Service.  I don't know that I have one

6  here.  That doesn't mean there isn't one.  It just means I

7  probably don't have a chambers copy.

8      MR. GOODSELL: It would probably have been affixed

9  to the notice.

10     THE COURT: Yeah, I mean, as I say, I don't bother

11 accumulating copies of things once I know that I've

12 satisfied myself that it's there.  Well, Mr. Huckins, I

13 guess -- I guess you should satisfy yourself, but the

14 problem is, if you believe there's a glitch in notice,

15 we're not going to solve it by noticing that 48 hours

16 before the hearing.  So to me, the creditors have a right

17 to know that the Debtor says I'm going to sell to

18 Burlingame.  They don't have to know each and every detail

19 of every schedule of the APA.  So no one has objected to

20 the sale to Burlingame, to my knowledge.

21     MR. HUCKINS: Okay.

22     THE COURT: And when I say I need the final

23 document filed, I really -- I don't think there's any need

24 to go to the expense to serve it on more than the people

25 who really care, but I don't want to mislead you.  I don't

1  want you to think we're going to solve a non-notice problem

2  by giving insufficient notice.

3          MR. HUCKINS: I understand.  Your Honor, I think

4  one of the things that we'll do is we will review the

5  notice that was provided --

6          THE COURT: Okay.

7          MR. HUCKINS:  -- review it carefully, and if we

8  have any concerns, Mr. Goodsell and I will confer, and

9  we'll notify the Court if we have concerns in that regard.

10          THE COURT: Well, look, I think you should do that

11  promptly, and if you believe that somehow some new notice

12  should be given now, you need to tell Mr. Goodsell that's

13  got to go fast, and you've got to help him with it.

14          MR. HUCKINS: I understand.

15          THE COURT: I mean I don't -- again, I want you to

16  enjoy your vacation if that's where you're going, but we're

17  not going to suspend due process while you're on vacation.

18          MR. HUCKINS: I understand.

19          THE COURT: So it'll have to be done earlier.  I'm

20  going to presume, because I've never seen the contrary in

21  this case, that Mr. Healy has been very good, I think,

22  about noticing everything out, that the motion was noticed

23  out, and all we're really doing is amending it.  So, Ms.

24  Parada, what did you tell me -- March what?

25          THE CLERK: March 5th at 10:00 o'clock.

1    THE COURT: March 5th at 10:00 o'clock.  Is the 6th

2   available also?  Well, I'm trying to think about when -- if

3   I make Mr. Goodsell file something by the 5th, or the 3rd

4   rather -- well, I would prefer to do it on the 6th, say at

5   around 11:00 o'clock in the morning.  Does that work for

6   everybody, all of you?

7    MR. HUCKINS: Yes, that works better, Your Honor.

8    MR. GOODSELL: That's better, right.

9    THE COURT: Okay.  Mr. Goodsell, why don't I say

10  that -- file and serve the key players, that is to say, the

11  lien holders, the bank, the examiner, and so on, the final

12  APA by March 3rd.  You can do that, right?

13    MR. GOODSELL: Yes.  And that would include any

14  supplemental declaration or any --

15    THE COURT: Right.  But you don't have to serve

16  the whole creditor body, that's my point.

17    MR. GOODSELL: I understand.

18    THE COURT: Anybody who's requested notice.

19  You're not aware of any objections that have been filed to

20  the Burlingame sale; have you?

21    MR. GOODSELL: I'm not.

22    THE COURT: Okay.  I'm not either.  So -- and as

23  far as the motion that the Debtor also filed to sell to

24  Nobel, I'm going to treat that as simply on the back burner

25  on hold for now, because -- and I don't regard the other

1 two, the Apple Tree or the other one, as the subject of --

2 they haven't risen to the level of the subject of a motion.

3 And as I say, if for some reason the Burlingame deal blows

4 up or is disapproved, then you can tell me what you want to

5 do about the Nobel offer, because I --

6         MR. GOODSELL: Well, just -- just to apprise the

7 Court of what might happen after the sale order and before

8 a close date in May, there are obviously various

9 conditions. One condition is the existing bank commitment

10 letter is only good through March 31st. So it's conceivable

11 that -- not likely - but it's conceivable that Bank of

12 Marin might not extend that time period, in which case,

13 we'd be back with a different -- we'd be back with

14 something else.

15         There is a condition that the two principals of

16 the school, which do not include Ms. Koelling, need to sign

17 three-year employment contracts. That might or might not

18 happen. If it didn't happen, the bank might or might not

19 waive that condition. So it's not as if we will have a

20 sale order approved on March 6th and, you know, close escrow

21 the next day.

22         THE COURT: No, I understand.

23         MR. GOODSELL: So there are possibilities that

24 this deal won't happen, and we will back.

25         THE COURT: No, I -- you made that clear.

1          MR. GOODSELL: Okay.

2          THE COURT: It could be licensing.  It could be

3 bank financing.  It could be cold feet.  It could be, you

4 know, the economic environment we're living in.  Things

5 change so quickly these days.

6          MR. GOODSELL: That's true.  The investors are

7 making a commitment now based on presumably their current

8 financial condition, and that might not be the same in May.

9          THE COURT: Okay.  Well, I understand.  That's the

10 best we can do.

11         MR. GOODSELL: All right.

12         THE COURT: All right?  Anyone want to raise

13 anything else that we need to cover?

14         MR. GOODSELL: Not today.

15         THE COURT: Okay.  All right.  Well, I'll look

16 forward to seeing you on the 6th.

17         MR. HUCKINS: Thank you very much, Your Honor.

18         ALL COUNSEL: Thank you, Your Honor.

19         THE COURT: We're going to continue the Nobel

20 motion; we're going to continue the Burlingame –- Kids

21 Connection/Burlingame A.P. to the same date and time also,

22 just for holding purposes.

23    (Whereupon, the proceedings are concluded at 11:06

24 a.m.)

25

1

2

3

4

5                    CERTIFICATE OF TRANSCRIBER

6

7

8          I certify that the foregoing is a correct

9    transcript from the digital sound recording of the

10   proceedings in the above-entitled matter.

11

12

13   DATED: June 11, 2009

14

15                    By: /S/ Jo McCall

16

17

18

19

20

21

22

23

24

25