1    UNITED STATES BANKRUPTCY COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    (SAN FRANCISCO DIVISION)

4

5  In re:

6  KIDS CONNECTION, INC.,          Case No. 08-30026-DM

7                                  Chapter 11

8                                  San Francisco,California
                                   January 28, 2009
9                                  9:31 a.m.
            Debtor.
10 _____/

11

12              TRANSCRIPT OF PROCEEDINGS
       1.  MOTION FOR SANCTIONS AGAINST DEBTOR AND ITS COUNSEL
              RE FAILURE TO PRODUCE DOCUMENTS
13      2.  MOTION (1) FOR ORDER TO SHOW CAUSE RE CONTEMPT
         AGAINST DEBTOR AND ITS COUNSEL, AND (2) TO SET A
14            STATUS CONFERENCE RE DUE DILIGENCE
              3.   FURTHER STATUS CONFERENCE

15

16 KIDS CONNECTION, INC.,

17         Plaintiff,

18    v.                          A.P. No. 08-3049

19 BURLINGAME CAPITAL PARTNERS II, L.P.,

20         Defendant.
   _____/

21

22              STATUS CONFERENCE

23      BEFORE THE HONORABLE DENNIS MONTALI
           UNITED STATES BANKRUPTCY JUDGE

24

25

```
 1   APPEARANCES:

 2
     For Burlingame Capital:   ALLEN, MATKINS, LECK, GAMBLE &
 3                             MALLORY, LLP
                               BY: WILLIAM W. HUCKINS, ESQ.
 4                                 ROBERT MOORE, ESQ.
                               Three Embarcadero Center, 12th
 5                             Floor
                               San Francisco, California 94111
 6

 7
     For the Debtor:           CAMPEAU GOODSELL SMITH, L.C.
 8                             BY: WILLIAM J. HEALY, ESQ.
                               440 North First Street, Suite 100
 9                             San Jose, California 95112

10                             (Appearing Telephonically)

11

12   For Lois Brady:           WENDEL, ROSEN, BLACK and DEAN
                               BY: MARK BOSTICK, ESQ.
13                             1111 Broadway, 24th Floor
                               P.O. Box 2047
14                             Oakland, California 94604

15                             (Appearing Telephonically)

16
     For City National:        JEFFER, MANGELS, BUTLER & MARMARO
17                             BY: RICHARD A. ROGAN, ESQ.
                               Two Embarcadero Center, 5th Floor
18                             San Francisco, California 94111

19
     For Linda Koelling:       GOLDBERG, STINNETT, DAVIS AND
20                             LINCHEY
                               BY: DENNIS D. DAVIS, ESQ.
21                             44 Montgomery Street, #2900
                               San Francisco, California 94104
22

23
     The Examiner:             DAVID A. BRADLOW
24                             3947 23RD Street
                               San Francisco, California 94114
25
```

1  APPEARANCES (CONTINUED):

2
   Also Present:              LEE BOHS
3                             (Appearing Telephonically)

4

5  Court Recorder:            AKBAR MALAKOOTI
                              UNITED STATES BANKRUPTCY COURT
6                             235 Pine Street
                              San Francisco, California 94104
7

8
   Transcription Service:     Jo McCall
9                             Electronic Court
                              Recording/Transcribing
10                            2868 E. Clifton Court
                              Gilbert, Arizona 85295
11                            Telephone: (480)361-3790

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2   January 28, 2009                        9:31 a.m.

3                   --—oOo—--

4          THE CLERK: All rise.  The court is now in

5   session, The Honorable Dennis Montali presiding.

6          THE COURT: Good morning.  Please be seated.

7          THE CLERK: Matter of <u>Kids Connection, Inc.</u>

8          THE COURT: Appearances, please?

9          MR. MOORE: Good morning, Your Honor, Bob Moore

10  and Bill Huckins from Allen Matkins for Burlingame Capital.

11         MR. BRADLOW: Good morning, Your Honor, David

12  Bradlow, the examiner.

13         MR. ROGAN: Good morning, Your Honor, Richard

14  Rogan for City National Bank.

15         MR. DAVIS: Good morning, Your Honor, Dennis Davis

16  for Mrs. Koelling.

17         MR. HEALY: Good morning, Your Honor, William

18  Healy for the Debtor on the phone.

19         MR. BOSTICK: Mark Bostick for Lois Brady, on the

20  phone.

21         MR. BOHS: And Lee Bohs for Nobel Learning on the

22  phone.

23         THE COURT: All right.  Good morning everyone.

24  Okay, I've got the status reports from everybody.  Mr.

25  Moore, I didn't -- and I guess you didn't intend to file

1  the agreement that apparently you submitted, the January

2  26th –- that wasn't missing inadvertently from your papers,

3  you didn't intend to file it, right?

4      MR. HUCKINS: No, Your Honor, that's correct,

5  yeah.

6      THE COURT: Okay.  That's fine.  Well, Mr. Healy,

7  you submitted your statement before Burlingame did, and

8  after that, Burlingame has submitted an agreement.  Where

9  are we on that?

10      MR. HEALY: Your Honor, can I ask for a

11  clarification first.  I did not receive –- I'm interpreting

12  from your statements that Burlingame may have filed a

13  status conference statement.  If that's the way –- I have

14  not received it.

15      THE COURT: You should have a gotten a notice of

16  electronic filing of it.

17      MR. HEALY: I did not get anything, and I just was

18  thumbing through my notes –-

19      THE COURT: Okay, I need you to speak up just a

20  bit.

21      MR. HEALY: I go through my ECF e-mail

22  notifications every day, and I didn't get anything, so I'm

23  a little uninformed as to that.  I did receive Burlingame's

24  revised or proposed Asset Purchase Agreement, and –-

25      THE COURT: Okay.  Let me clarify something.  Mr.

1  Huckins, you provided a chambers copy.  I presume it has

2  been filed electronically?

3         MR. HUCKINS: It has been filed electronically.  I

4  got confirmation this morning, Your Honor, and it was

5  served by mail as well.

6         THE COURT: What's the docket number?  Do you

7  know?

8         MR. HUCKINS: I believe it's either 219 or 220, or

9  maybe 218.

10        MR. ROGAN: 218, Your Honor.

11        THE COURT: Okay, well, Mr. Healy, if it's

12 convenient for you, and you're next to your desk top, maybe

13 you can just pull it up and look at it.

14        MR. HEALY: Right.  Okay.  That's fine.  The

15 answer to --

16        THE COURT: Well anyway, the point is, the

17 statement is made that the January 26 Asset Purchase

18 Agreement was submitted, and Burlingame represents to me

19 that the two obstacles that it acknowledged -- its counsel

20 acknowledged at the prior hearing were in its court to

21 resolve appear to have been resolved.  The Brady matter

22 seems to be on the way to resolution, and the financing

23 commitment of Burlingame's bank and so on appears to have

24 been satisfied.  So --

25        MR. HEALY: Well, what we received was simply --

1  I'm trying to open it right now –- the status conference

2  statement.  All we received was the revised agreement,

3  which so far –-

4         THE COURT: Okay.  Well, I mean, from whatever

5  reason, obviously the status conference statement has been

6  served electronically on the parties.

7         MR. HEALY: Right.  I appreciate that.

8         THE COURT:  I'm not faulting you for not having

9  read it yet, but all I'm saying is, it exists, and you can

10  see it.  But you don't need the status conference

11  statement.  What's the Debtor's response to the January 26th

12  Asset Purchase Agreement proposal?

13         MR. HEALY: Well, we're reading it right now

14  because we're trying to compare it to the last one, and I

15  notice so far, as I read through it, they have not

16  addressed any of the non-financing –- well, there's no

17  response to our prior response we filed with this Court in

18  early December about, you know, the issues that we filed

19  with the Court about the financing, the employment, et

20  cetera, et cetera.  I do notice –- the one thing I notice

21  so far paging through the document is the price has been

22  lowered from 6.2 to six million.

23         THE COURT: I guess that what's happens when

24  you're the only bidder.

25         MR. HEALY: Well, they're not the only bidder,

1 but --

2         THE COURT: Well, on this date of today's record,

3 they're the only bidder.

4         MR. HEALY: Oh, well, I'll agree with that.  But

5 basically and very simply, we received it.  We forwarded it

6 on to the Debtor.  There were some problems to get the size

7 of the -- it came here electronically initially and we've

8 had a lot of problems transferring it on to the Debtor.  So

9 we're delivering it to the Debtor physically so the Debtor

10 could page through it.  We are going through it ourselves,

11 and I think we'll respond once we --

12         THE COURT: Okay.  But let me -- would you go back

13 up a minute.  I missed you -- I'm having a little trouble

14 hearing you.  Your voice is a little off.

15         MR. HEALY: Sorry.

16         THE COURT: You said that Burlingame hadn't

17 addressed some issues previously.  What were those?

18         MR. HEALY: Well, we had filed before our last

19 hearing, we filed the Debtor's response -- right before our

20 last hearing status conference on December 8th --

21         THE COURT: Right.  I just don't remember what --

22         MR. HEALY:  -- and we went through the documents

23 that we received from Burlingame and noted that a) we had

24 not received -- at that time, we had not received

25 schedules, and we went through the documents we had

1 received and pointed out problems that we saw. We attached

2 to it prior communications to Burlingame's counsel asking

3 to address issues, and we have not received any responses

4 to that. What we just simply received was what looks like

5 a duplicate -- I don't know if there's been changes yet

6 because I haven't been able to go all the way through it --

7 but it looks like what we've got is the same Asset Purchase

8 Agreement, with schedules attached, with a reduced price,

9 with no responses to all the issues that we had set forth

10 in early December, and also in early September and several

11 prior attempts.

12        So I don't think we're at square one. We're deep

13 down the road, but we need to have some answers to some of

14 the questions, and I don't know what questions that we

15 originally asked have been addressed by what I have on my

16 desk or even in the status conference statement, for that

17 matter.

18        THE COURT: Okay. When do you think you'll be

19 able to give Mr. Huckins a revised statement of questions

20 you'd like answered?

21        MR. HEALY: Well, I've reviewed it today -- I'm

22 reviewing it today, so I'm hoping in the next couple of

23 days I'll finish reviewing and comparing what I've received

24 versus what I received in the past and all the questions we

25 asked. It's difficult because it's a long document, and we

1  still have some of the fundamental questions whether we can

2  do this by --

3          THE COURT: I understand.

4          MR. HEALY:  -- motion or by Plan.

5          THE COURT: The length of the document doesn't

6  frighten me.  If there are fundamental deal points that you

7  in good faith on behalf of the Debtor believe that

8  Burlingame needs to clarify, then I'm pressing you to lay

9  those points out promptly to Mr. Huckins so we can --

10          MR. HEALY: Oh, we certainly will.

11          THE COURT:  -- because, frankly, if you're not

12  able to do that, I think Burlingame's point about they want

13  a willing seller and cooperative seller is more on point.

14          MR. HEALY: I think there's no doubt that we've

15  been extremely prompt and responsive, and that's my exact

16  point, that here I am on January 28th, and I'm not sure,

17  because I haven't gone through what's on my desk now, but

18  I've got a response to what I filed with the court on

19  December 8th.

20          THE COURT: Okay.  Okay.  Well, Mr. Healy, I'm not

21  interested --

22          MR. HEALY: So I have no problem going through --

23          THE COURT: Wait a minute.  Listen.  I'm not

24  interested in December 8th, and I accept the fact that today

25  is the 28th and you have only had the agreement since two

1 days ago. I'm not asking for instant perfection. I'm

2 saying reasonably when do you think you'll be able to

3 respond to Burlingame's points that are deal points, not

4 nits.

5    MR. HEALY: I think the simple answer to your

6 question is, late this week or the very first part of next.

7    THE COURT: Okay. Mr. Bradlow, you've seen the

8 agreement. As far as you're concerned, does it look like

9 it's a doable deal? Again, I'm not saying that the Debtor

10 has to accept it; I'm just asking you as the examiner

11 whether in your mind the major impediments have been

12 removed.

13    MR. BRADLOW: I think it looks like a very

14 reasonable proposal, and I think it should move forward as

15 quickly as possible.

16    THE COURT: And again, since I haven't seen it

17 either, are there some conditions precedent that require

18 some cooperation on the Debtor's side?

19    MR. BRADLOW: Well, frankly, Your Honor, I do see

20 the Debtor's cooperation as being a problem, and I'm

21 concerned about this deal moving forward. I see the

22 economy becoming more and more problematical. As the Court

23 pointed out, there is no real offer at this point from

24 anybody else, and in the meantime, I think that the morale

25 of the teachers may decline. I think there may be

1 enrollment issues as parents are uncertain about the future
2 of the school.

3        THE COURT: Right. Well, let me change the
4 question and ask it a different way. One of the risks of
5 appointing an examiner and getting someone with your
6 experience to play the role that you've played, is that if
7 I choose to appoint a trustee, I can't make it you.

8        MR. BRADLOW: I understand.

9        THE COURT: Congress took that away from me, but
10 if you were the trustee, would you be prepared at this
11 point to move forward to ask for this sale to be approved,
12 or are there still some issues that you have to insist that
13 Burlingame Capital get taken care of first? Again, I don't
14 want nit-picks like five-day notice instead of ten-day
15 notice. I'm talking about deal points.

16        MR. BRADLOW: If I was the trustee, I would
17 definitely ask counsel to move forward and notice a sale to
18 Burlingame.

19        THE COURT: Okay. Well, Mr. Healy, I guess what
20 I'm going to say may not sit too well with you and your
21 client, but I guess I'm going to say I'm going to give you
22 a deadline to either do that, to go forward with it, or
23 explain –- convince me why you can't, or I'll be forced to
24 order the appointment of a trustee or somehow figure out a
25 way to expand Mr. Bradlow's powers, if the law would permit

1  me, to have him take over as the seller.  And having said
2  that, I by no means mean to exclude any other competitive
3  offer, if there is one.  But at the moment, I mean the fact
4  that Mr. Bohs is on the phone call means, indeed, I
5  presume, his client is still interested, but it's time
6  to -- after all these months -- to say, okay, let's do it.
7  And then if there is another offer to match up against the
8  Burlingame one, I guess we'll have to deal with the legal
9  challenges and the questions of whether Burlingame has a
10  trump card that could prevent another sale from going
11  forward, but at the moment --

12        MR. HEALY: Your Honor, I don't mind a deadline.
13  I just obviously would like a reasonable deadline, and I --

14        THE COURT: That's why I didn't give you one and
15  then ask you if that was good enough.  I asked you how much
16  time you needed, and your response did not strike me as
17  unreasonable.

18        MR. HEALY: Thank you.  And I do think -- I mean
19  just so the Court's clear, there is a mathematical issue
20  which may, you know -- this proposal looks as if it -- I
21  have to go back and do the math, but it looks like this
22  proposal proposes to pay no money to unsecured creditors.
23  I do have to double --

24        THE COURT: Well, the status statement -- here's
25  what I'll tell you from the status conference statement

1  that you haven't had a chance to see yet.  It said, and

2  again, Mr. Huckins signed it.  I presume he can explain it

3  if I ask him to.

4           "Burlingame's proposed purchase would provide

5              sufficient funds to pay off the remaining senior

6              lenders, City National and Mr. Fitzpatrick, at

7              closing and provide approximately 500,000 of

8              additional funds for distribution to allowed

9              administrative expenses and allowed unsecured

10           claims, excluding Burlingame's claim."

11  Now I don't know what that translates to.  Do you, Mr.

12  Huckins, know what that likely translates to, the cents on

13  the dollar for unsecured creditors?

14        MR. BRADLOW: I calculated approximately 60 cents,

15  but that's assuming that we have accurate numbers for the

16  secured claims and the admin claims and the general

17  unsecured claims.  I have a number --

18        THE COURT: Well the admin claims would be your

19  fees, Mr. Healy's fees.  Burlingame is not going to seek

20  fees itself, is it, out of its own Plan?

21        MR. MOORE: No, Your Honor.

22        MR. HUCKINS: Not at this juncture.

23        THE COURT: I mean the law permits, as you know --

24        MR. HUCKINS: Not at this juncture in connection

25  with this proposed transaction.

1          THE COURT: Okay.  I mean that would be a "gotcha"

2   if you said, Gee, we have an administrative claim for

3   proposing the Plan, and it's a million dollars.  That

4   wouldn't be very good.  Okay.  Yeah, of course, you need to

5   know what the bank is owed and Fitzpatrick is owed and what

6   the professional fees are, but your rough cut is it's a 60

7   cent deal right now.

8          MR. BRADLOW: Yes, Your Honor.

9          THE COURT: Okay.

10          MR. HEALY: Your Honor, I'm going to ask one

11   more -- if I could ask a favor.  I'm just now opening this

12   status conference statement.  It refers back to the Bank of

13   Marin loan commitment, and I'm going to ask Mr. Huckins

14   to -- it's been a devised bank loan commitment to provide

15   that to us because the loan commitment that was previously

16   provided to us had big hurdles in there, none of which the

17   Debtor had control over.

18          THE COURT: Well, listen, Mr. Healy, I don't want

19   to turn this into -- or force you to negotiate with Mr.

20   Huckins on this in court here.  I think that what you need

21   to do in my mind is to go through the document, go through

22   the agreement, and confer with Mr. Bradlow, if you wish,

23   obviously confer with your client, and then tell Mr.

24   Huckins I'd like this, this, and this.  And if he provides

25   it all to you, then you can't complain about that.  If he

1  doesn't provide it to you, I guess you can complain to me,

2  and you're entitled to make a decision.

3         I guess what I'm really trying to say -- and

4  maybe I'm not making it clear -- I'm relying on Mr.

5  Bradlow's neutrality and his business judgment, and he says

6  he's got a doable deal that's reasonable, and if he were

7  trustee, he would go forward with it.  So what I'm saying

8  is, you've got a short period of time to get moving on this

9  deal or convince me why you shouldn't, but you're more than

10 welcome to have a competitive offer if you have one to

11 present.  At the moment, you don't have one.

12        MR. HUCKINS: Your Honor, may I be heard just

13 briefly?

14        THE COURT: Sure.

15        MR. HUCKINS: I have -- I think this is proceeding

16 in a manner that is acceptable to Burlingame at this

17 juncture, but I'd like to, I guess, emphasize a few things.

18        THE COURT: Pull the microphone a little closer so

19 the --

20        MR. HUCKINS: I'd like to emphasize a few things.

21 One, as Mr. Bradlow has indicated, time really is of the

22 essence here.  We need to move forward, both in terms of

23 being able to consummate a transaction with the financing

24 and capital markets that exist presently, as well as to

25 address some of the operational issues raised in Ms. Frye's

1 (Phonetic) letter. So I think -- I mean it is extremely

2 important that things move quickly.

3          Secondly, Burlingame has requested and it's part

4 of the Bank of Marin lending commitment that there be

5 certain due diligence and meetings with teachers,

6 administrators, and so forth, that are very important and

7 we have deferred that, as the Court will probably recall --

8          THE COURT: Right.

9          MR. HUCKINS: -- until Burlingame had its capital

10 in place, and I think that's something that needs to be

11 addressed at this point in time, so that we can get, you

12 know, beyond that obstacle. I guess the last thing that I

13 would like to emphasize is that I think we need to put some

14 contours in concrete, you know, guidelines, around this

15 effort to negotiate a consensual transaction with the

16 Debtor, if they're going to be a willing seller. And I

17 think to do that, we need to have, you know, deadlines

18 imposed and if those deadlines are not met, then I think

19 the Court ought to appoint a trustee immediately without

20 further hearing. If a matter -- essentially what I'm

21 proposing is, Your Honor, if a transaction can't be

22 negotiated, completed, and proposed to the Court by next

23 Friday, February 6th, that the Court directs the Office of

24 the U.S. Trustee to immediately appoint a Chapter 11

25 trustee in the case.

1    THE COURT: Well, look, you heard Mr. Bradlow say

2  he thinks it's a reasonable deal to go forward with.

3    MR. HUCKINS: M-hm.

4    THE COURT: But I can't deny the Debtor the right

5  to disagree, and if they do disagree for some reason, I owe

6  them the right to be heard on it.

7    MR. HUCKINS: That's fine.

8    THE COURT: Now whether that can all happen in

9  your time frame, I'm game, I guess, but it may not be

10  exactly that precise, but I'm certainly amenable to that.

11    MR. HUCKINS: Okay.

12    THE COURT: But would you clarify something.  My

13  recollection is that I convinced you that it was not

14  appropriate -- I believe someone else supported this too --

15  for Burlingame to be in there talking to teachers.  But are

16  you at a point -- do you still need to interview the

17  principal?

18    MR. HUCKINS: The administrators and the teachers.

19    THE COURT: Well, but there are two different

20  issues.

21    MR. HUCKINS: True.

22    THE COURT: I thought to me --

23    MR. HUCKINS: We've got essentially two principals

24  at the elementary school and at the pre-school, so we

25  definitely need to speak to both those.

1       THE COURT: But what I'm trying to get at is, does

2   the January 26th agreement contemplate that that will occur,

3   or did the cover letter -- what is it -- where do we --

4   other than your statements to me and the record, which

5   comes first, the interview or the done deal?  In your mind,

6   is the APA ready to be signed?

7       MR. HUCKINS: The APA is in a form that Burlingame

8   is ready to sign.  Burlingame has actually signed the APA.

9   So --

10      THE COURT: So how do the interviews -- again,

11  suppose the trustee --

12      MR. HUCKINS: That's part of the, essentially,

13  conditions to consummate the transaction.

14      THE COURT: Consummate, right.

15      MR.  HUCKINS: Yes.

16      THE COURT: So what I'm getting at is, you've been

17  pressing for a trustee.  You haven't got one yet.  If you

18  had one in hand today, would the trustee have to produce

19  people for interviews first, or would you have to have the

20  Court approve your deal first?

21      MR. HUCKINS: We would hope that they would

22  essentially proceed on parallel paths so that if the

23  trustee were to sign the transaction, we would be that much

24  further along.  If we delayed the signing of the asset

25  purchase and then commenced essentially what amounts to,

1   you know, post-execution due diligence, then that -- you

2   know, that would have a tendency to delay things perhaps a

3   couple of weeks, so --

4           THE COURT: But not a lot.

5           MR. HUCKINS: Not a lot.

6           THE COURT: Not a lot.

7           MR. HUCKINS: Correct.

8           THE COURT: In other words what -- so you're not

9   going to close the deal unless you have the interviews.

10          MR. HUCKINS: No, absolutely --

11          THE COURT: If the interviews -- but you can also,

12   I take it, back out of the deal if the interviews lead you

13   to conclude that there's some reason you don't want to go

14   forward.

15          MR. HUCKINS: It provides that, but that's

16   certainly not Burlingame's intent.

17          THE COURT: I understand that. But what I'm

18   getting at is, that I made it clear that -- and I guess you

19   followed that suggestion, that you get a deal in place and

20   then you go have your interviews.

21          MR. HUCKINS: That's true.

22          THE COURT: Well, let's see, Mr. Rogan, do you

23   want to -- every month you tell me that we should push this

24   sale so your bank can be paid.

25          MR. ROGAN: I'll all for pushing the sale, and --

1    THE COURT: Still of that opinion?

2    MR. ROGAN: Absolutely.  I'd like to see the

3 Debtor make a thoughtful but timely response, address the

4 issues that may be existent between the parties, and move

5 forward.  Burlingame's got cash on the line that's enough

6 to pay my client, and of course, I'd like to see that deal

7 close.  If there's another deal, that's fine too, but --

8    THE COURT: Well, okay, fine.  Here's what strikes

9 me as appropriate, that I continue -- set a hearing for a

10 week from Friday, the 6th, and that hearing stays on

11 calendar and at that hearing, Mr. Healy, prior to it, filed

12 something, and then he convinced me at that hearing why the

13 Debtor should not move for approval of the Burlingame deal,

14 but if the Debtor chooses to move to approve the Burlingame

15 deal, and files something prior to the 6th, we don't have to

16 have a hearing.  And Burlingame is -- excuse me -- Kids

17 Connection is free to propose an alternative if it has an

18 alternative to present, or to give Nobel or anyone else an

19 opportunity to submit a competing bid by a reasonable

20 deadline.  Normal deal.

21    But essentially if Burlingame -- I'm sorry -- if

22 Kids Connection refuses to do that motion or is unable to

23 file that motion by the 6th and is unable to convince me why

24 I shouldn't do otherwise, I will order the appointment of a

25 trustee, but I would invite Burlingame or anyone else to

1  tell me if there's a way to empower Mr. Bradlow to do the

2  same thing without violating the law, assuming he's willing

3  to do it.  Again, it may be the same problem.  We have this

4  structure, and I can't give him all the powers of a trustee

5  and continue to call him examiner, and if the real key is

6  to act like a seller -- what Burlingame in your papers call

7  a cooperative seller -- then I'll have to find you an

8  alternative seller, and Mr. Bradlow will have to step

9  aside, in the place of a trustee.

10         Mr. Healy, that's my thinking.  Do you want to

11  convince me to do it some other way?

12         MR. HEALY: I think your approach is reasonable,

13  Your Honor.  I can live by it and follow it, and I did want

14  to just throw something out there.  I don't think it's a

15  big issue for the Court, but this letter from Ms. Frye --

16  remember hopefully that she's one of approximately 50

17  employees --

18         THE COURT: Right.

19         MR. HEALY:  -- and her comments, I have personal

20  knowledge of, are just completely wrong, essentially across

21  the board.  I can address it, but I really give the letter

22  as much weight as it took me to get it from my in box to my

23  out box.

24         THE COURT: I'm sorry, again.  I'm having trouble

25  hearing you.  I don't know if the others can hear you as

1  well.  I can't.  Say that again.

2          MR. HEALY: I just -- I can address that letter if

3  the Court really wants me to, but -- and I invite Mr.

4  Bradlow to come down if he wants to, but it's one employee

5  out of approximately 50.  I have personal knowledge that

6  she's factually incorrect across the board, and I simply

7  read her letter, consulted with the Debtor, and put it in

8  my out box, because it's just all factually wrong.

9          THE COURT: Okay.  Well, Mr. Healy, I don't ask --

10  I'm not asking for a response.  I often get letters from

11  individuals that just write to me as though I can solve

12  their problems, and what my law clerk sent out to you and

13  the others is almost a boiler plate form.  Obviously it was

14  modified slightly, and I don't regard -- I don't regard her

15  letter -- excuse me -- I don't expect you to respond to me

16  about her letter, apart from her or the --

17          MR. HEALY: Well, I had raised that because I

18  noticed it's in the status conference statement submitted

19  by Burlingame, and I believe Mr. Bradlow may have made a

20  comment, but I'm not sure exactly --

21          THE COURT: Yeah, but I think what's more

22  important, Mr. Healy, is that this case is getting old, and

23  it happens to have an unusual asset in the form of a

24  children's school, but it could be any kind of debtor.

25  It's time to get this case out the door.  The bank's been

1  patient.  There's been contentious issues on the sale.

2  It's time to get this property sold.  There's no other exit

3  strategy.  If your client had won the lottery and wanted to

4  propose a Plan that kept the Debtor in place and paid

5  creditors, you're welcome to do it, but you've got a year

6  to do that.  So I don't see --

7          MR. HEALY: I think we -- we agree, Your Honor.

8  We've been focusing on selling.

9          THE COURT: Right.

10         MR. HEALY:  I don't think I would allow the

11  Debtor to spend its money on lottery tickets, but if they

12  do win the lottery, then we'll go with Plan B.

13         THE COURT: Well, no, but I mean, I fully

14  understand the owners -- you know, how many times have we

15  had to have hearings where I acknowledge the acrimony that

16  all of you are well aware of.  But the point is, something

17  has to happen.  This Chapter 11 has to get resolved, and

18  Ms. Frye's letter is just one of those letters that I can't

19  act on my own, so I forward it to the players.

20         MR. HEALY: Understood, Your Honor.

21         THE COURT: I think what I'll do -- again, I'm

22  open to have someone tell me not to do it this way -- but I

23  would set a hearing on the 6th that would go off if the

24  Debtor filed a motion, and I would set a date for a hearing

25  on the motion.  And there's no reason why we have to

1  stretch this out and out and out.  So my instincts tell me

2  that I should hear this somewhere like two weeks after

3  that, like February 20th, and that would provide an

4  opportunity for any competing bids.  If there is a legal

5  challenge to a competing bid, such as Burlingame previously

6  articulated a challenge to the Nobel prior offer, then I

7  need to resolve that and see if it's a deal that could

8  happen, and if they are competing bids, we'll make a

9  decision at a continued hearing date.  And if there is no

10 other bid, then the only question will be whether the

11 Burlingame offer should be approved.

12        So does anyone have a problem with that?  Now

13 that -- I know the calendar is clear on the 20th, right?

14        THE CLERK: Yes.

15        MR. HEALY: Your Honor, this is Mr. Healy.  I am

16 just concerned that -- I mean the Court knows better than

17 me, but I don't know how -- even if I accepted Burlingame's

18 offer -- not me, but the Debtor accepted Burlingame's offer

19 today, I get a little concerned about the notice

20 obligation.

21        THE COURT: How about if I shorten the time for

22 you.

23        MR. HEALY: Oh, oh.

24        THE COURT: I'm the one that shortens the time.  I

25 mean I will orally do it now and say, if you file a motion

1   no later than the 6th and it's noticed out no later than the

2   6th, it can be heard on the 20th, and I'll sign an order that

3   reiterates that.  Obviously -- and I say this to

4   Burlingame -- if things don't go this way and on the 6th I'm

5   persuaded to either not require the filing or to appoint a

6   trustee, then I don't see how we could hear it as quickly

7   as the 20th.  Again, if Mr. Bradlow could somehow do it, we

8   don't need to bring a neutral party up to speed, but I

9   can't assure you that I know that I can let Mr. Bradlow

10  take that role, and a new trustee would have to have

11  counsel and, you know, the whole -- the very thing that I

12  worried about in this case.  So -- but let's talk about

13  some other dates.

14          So I'm saying motion by 2/6 -- why don't I say

15  competing bid by -- well, I'm going to say February 10th,

16  and any objections to either of them -- well, some of you

17  help me.  Tell me what -- rather than my sitting here --

18  make the dates.  Let me get some suggestions from counsel.

19  Mr. Huckins, if I -- I say, I'm not going to -- I can't

20  tell the Debtor they can't propose a competing bid, so if

21  they go with a motion no later than the 6th with your bid,

22  is there any reason why I shouldn't pick a few days after

23  that for any competing bids to be submitted?

24          MR. HUCKINS:  No, that's fine, Your Honor.

25          THE COURT:  And then it's a question of having

1 objections to any --

2          MR. HUCKINS: Correct.

3          THE COURT:  -- I mean, remember any creditor has

4 the right to object to any of these transactions.  So I

5 would suggest that -- the 16th is a holiday, right?

6 President's Day?

7          MR. HEALY: Yes, Your Honor, this is William

8 Healy.  It's President's Day.  We're supposed to close on

9 the 15th.

10          THE COURT: Well, actually we're not closed

11 electronically, but -- so why don't we say objections by

12 the 17th.  I guess because we're trying to make this happen

13 fast, Mr. Huckins, if you -- let's assume that Nobel does

14 submit a proposal, and let's suppose you reiterate your

15 prior objections, that are somewhat legal in nature,

16 leaving aside the legal challenge, it's easier for me to

17 say which offer, A, B, or C, is best for the estate.  But

18 to the extent that you submit a legal challenge, I think I

19 have to argue it, but I think -- I may not make the Debtor

20 argue it in brief, but I think we'll take it up at the

21 hearing on the 20th.

22          MR. HUCKINS: That's fine.

23          THE COURT: Okay.  What time --

24          MR. HUCKINS: Your Honor, before we --

25          THE COURT: Yes, sir.

1          MR. HUCKINS: -- I guess set one deadline, my
2    client has informed me that it's very important, both for
3    their transaction and for the financing, that I guess prior
4    to the 6th, that they have access and meetings with the two
5    principals of the two schools.  So I'd like to make sure
6    that that happens.  We don't need to get into discussions
7    with the teachers, but the two principals who would
8    administer the two schools, we would need to meet with
9    those two individuals.  And I suspect we can --

10          THE COURT: But, again, why is it necessary before
11   the 6th.  You said before you close.  Why before a motion is
12   filed?  I mean I don't care.  I'm just curious as to why
13   you happen to say that.  Is it a personal timing issue, or
14   is it something more than that?

15          MR. HUCKINS: I think it's important.

16          THE COURT: Well --

17          MR. HUCKINS: Your Honor, I think in part, there
18   are personal timing issues, but -- I mean if we have a deal
19   consummated by the 6th, then I suppose we can deal with it
20   after that.

21          THE COURT: Yeah, again, we're back to this
22   bizarreness.  If the Debtor gets religion and cooperates,
23   then cooperation includes making the principals available.
24   If the Debtor decides it won't cooperate, then I think
25   we're talking about a trustee again.

1        MR. HUCKINS: And, Your Honor, we will in the

2   interim before the 6th, we'll work with Mr. Bradlow, and

3   we'll see if -- if we can work something out consensually,

4   we'll do it that way.  If not, we'll bring it to your

5   attention on the 6th.

6        THE COURT: Okay.  Are we clear at 9:30 on the

7   20th?

8        THE CLERK: We have one matter at 10:00 o'clock.

9        THE COURT: Which one?

10        THE CLERK: The Church of God in Christ, motion --

11        THE COURT: Let's do this one at 10:30 on the 20th.

12   And let's have a tentative date for February 6th.  What's

13   good then?

14        THE CLERK: 10:30.

15        THE COURT: Okay.  February 6th at 10:30.  Again,

16   Mr. Healy, the ball is in your court.  You can -- you can

17   get rid of that hearing by having a motion on file that's

18   consistent with our comments, but that will be a continued

19   status conference, and frankly, it'll be a hearing on the

20   possible appointment of a trustee.  And assuming that

21   that's not necessary, then on February 20th, we'll have a

22   hearing also at 10:30 on the sale.

23        Now, Mr. Huckins -- wait a minute; let me make a

24   note -- Mr. Huckins, I think Mr. Healy is completely with

25   his prerogatives to say, look, let's either get this OSC re

1  Contempt off calendar, or move forward with it.  Any reason

2  why we can't just drop it for now?

3         MR. HUCKINS: We're willing to withdraw it for

4  now.

5         THE COURT: Withdraw it for now.  Okay.

6         MR. HUCKINS: Yeah.

7         THE COURT: That's fine.  The contempt motion, et

8  cetera, will be withdrawn and -- well, actually there are

9  two.  There's a motion for sanctions, and there's the

10  motion -- an OSC -- or a motion re contempt.  So I'll

11  consider both of those dropped.  Mr. Healy --

12         MR. HUCKINS: Your Honor, they're withdrawn

13  without prejudice.

14         THE COURT: Withdrawn without prejudice.  I'll

15  consider them both withdrawn without prejudice.

16         MR. HUCKINS: Thank you.

17         THE COURT: Now Mr. Healy also says -- I think,

18  Mr. Healy, you want to move on the adversary proceeding.  I

19  think, given where we are, that should stay on hold, and

20  I'll just put that over to the 20th as well.

21         MR. HEALY: I agree, Your Honor, based on what

22  that status conference statement said and what we're

23  talking about.

24         THE COURT: Yeah, I mean if for some reason

25  Burlingame decides not to go forward or the sale isn't

1  approved, or some other sale is approved, then obviously

2  Kids Connection has a right to prosecute that adversary

3  proceeding.  Okay.

4       MR. HEALY: I will say, Your Honor, it may be

5  implicit in the Asset Purchase Agreement that Burlingame

6  acknowledged -- and I think it is, to tell you the truth --

7  that they acknowledge that they're not a secured creditor

8  against the real property by the way they're proposing this

9  transaction.  But I think that would work out.  That to me

10 is a minor issue.

11      THE COURT: Well, look, it seems to me that if --

12 let's assume for the moment that Burlingame's offer is

13 consummated.  Frankly, in my opinion, Kids Connection ought

14 to then just go into Chapter 7 and the adversary proceeding

15 is moot, because essentially what Burlingame is proposing

16 is the equivalent of a Plan without a Plan.  I mean it's

17 saying I'm subordinating, and I'm providing all the money

18 for creditors.  But I mean I realize it's not a Plan, and

19 it's not yet a Chapter 7, so I guess I'm just thinking out

20 loud.  Mr. Healy, let's put it this way, if we get to the

21 point where the Burlingame sale is consummated, you need to

22 tell me where you think the case ought to go.

23      Mr. Huckins, what does your Asset Purchase

24 Agreement say, if anything, about the adversary proceeding?

25      MR. HUCKINS: It basically is addressed.  I think

1  the Court's comments are accurate.  If the sale is

2  consummated, then I think it would largely render the

3  adversary proceeding moot.  I do disagree that there's any

4  implicit or explicit concession that, you know, we think

5  the -- that we concede to the allegations in the complaint.

6  We don't.  But we have --

7          THE COURT: But there's nothing -- there's no

8  remedy.  I mean if you say that there's nothing -- that

9  there's no lien and your claim is subordinated --

10         MR. HUCKINS: If we have -- yeah, exactly.  If we

11  have subordinated our claims and liens to all other

12  creditors and all other interests in the case, as part of

13  the Asset Purchase Agreement, then I agree with the Court,

14  it renders the adversary proceeding moot.

15         THE COURT: Okay.  Let's suppose now -- again, I'm

16  jumping the gun here, but if the Burlingame sale is

17  consummated, then based upon at least what Burlingame's

18  counsel said in the status conference statement, we have

19  essentially a bankruptcy estate with $500,000 in it, and

20  then we've got to figure out a mechanism to get that money

21  to the creditors who are entitled to it, and it seems to me

22  a Chapter 7 is one alternative.  I suppose a liquidating

23  Plan could be filed, but believe me, it would have to be

24  the bare bones.  We'd use one of our little short from two-

25  page Plans and virtually no disclosure statement, but I'll

1  cross that bridge when we come to it, because maybe the

2  sale won't happen.  Maybe another sale will be approved.

3  I will ask everyone now, is there anything else

4  we need to attend to today?

5  MR. ROGAN: Well, the only concern I have, Your

6  Honor, is I can see, you know, if this process works, it's

7  certainly fine with us if Burlingame comes forward and the

8  motion is teed up and approved, that's great by my client.

9  We get paid.  What I'm concerned about is further delay.

10 If it turns out there is a competing bid, almost certainly

11 a competing bid will require a Plan or some other means to

12 value Burlingame's claim, because I don't know how we can

13 have apples and apples in terms of a competing bid here

14 since -- I mean can a competitor pick up and say, well,

15 Burlingame is subordinated?  I don't think so.

16 THE COURT: (Laughing.)  They can try.

17 MR. ROGAN: So we've got to put in something that

18 considers that possibility.  Perhaps it's nothing more than

19 a trustee is appointed, and in the case there is another

20 Plan or another higher bid, the trustee can set that up by

21 virtue of proposing a Plan.  I don't know.

22 THE COURT: Yeah, I mean, I don't know what to do.

23 Look, even if a trustee were in place, that doesn't solve

24 the problem.

25 MR. ROGAN: No.

1    THE COURT: The real issue I suppose would be a)

2  is there going to be another bid; and b) is Burlingame

3  going to -- or anyone else interpose a challenge to that.

4  Or can we tell on the face of it which is best for the

5  estate.

6    MR. ROGAN: Well, I'm just concerned that what we

7  might get is a further attempt at an overbid, but we don't

8  have the usual sales procedure in place that allows you to

9  have bidders all on the same footing because of the nature

10  of Burlingame's bid.

11    THE COURT: I recognize that.

12    MR. ROGAN: I'm fine with the nature of

13  Burlingame's bid, but I do want to make sure everybody

14  understands that we could be back again.

15    THE COURT: Well, do you have a suggestion on what

16  you want me to do?  I mean I share with you the concern,

17  but I'm trying to --

18    MR. ROGAN: I'm thinking that what we ought to

19  require is that if the Debtor is going to accept a

20  competing bid because the Debtor believes that it is

21  somehow or another better for the creditors than the

22  Burlingame bid, that the Debtor should also, when doing

23  that, be required to come up with some procedural mechanism

24  to get that bid approved.  A Plan seems to be the obvious

25  one, but there might be others.

1    THE COURT: Well, look, let's see if that's

2  realistic.  We have what Mr. Bradlow, as the neutral party,

3  says is a doable deal in hand.

4    MR. ROGAN: Yes.

5    THE COURT: It's the only offer, at least on the

6  public record.  If Mr. Healy has received another offer

7  from someone, he hasn't shared it with me, and presumably

8  with you.  And so if on February 6th, Kids Connection files

9  a motion to approve the Burlingame sale, and I give any

10  competing bidder, Nobel or anyone else, until a later date,

11  they file it -- I'm not sure -- I'm not sure that we can do

12  much in that time frame.  You would have the Debtor, I take

13  it, indicate whether it accepts that bid.  What if it

14  doesn't accept that bid, but it's still a legitimate bid.

15  I mean that's the problem; isn't it?

16    MR. ROGAN: Well, it is.  One of the problems is,

17  I'm not sure that the fact that we set a date for a

18  competing bid is of much consequence.  I'm not sure there

19  can be a competing bid because nobody else can bid in the

20  same manner that Burlingame does.  That's not to say

21  someone else might not bid a bid that could be acceptable

22  if it was properly presented.  My concern is that I would

23  like to see -- I'd just like to see this end, of course,

24  and I'm concerned that we will get right back into the

25  stalemate we've had if someone else comes in.  And the

1   reason I say this is, we have had communication from at

2   least two other potential bidders here.  Nobody has come

3   forward with anything firm.  Obviously I'm pleased with the

4   Burlingame offer and hope that it closes, but if somebody

5   else were to come in here, I want to make sure that we

6   aren't still here in May.  You know, I mean at some point,

7   doesn't the Debtor have to --

8           THE COURT: I think you said that last year.

9           MR. ROGAN: Yeah, I think I said I didn't want to

10   be here after December, but what can I say.

11          THE COURT: But don't we have to take it one step

12   at a time, reluctantly?

13          MR. ROGAN: Well, I think so, or we have to have

14   some deadline that the Debtor needs to either approve this

15   sale or get a Plan on file.

16          THE COURT: But, Mr. Rogan, what I'm saying is, I

17   don't think replacing the Debtor with a trustee solves the

18   problem.  We have -- Burlingame believes it's in a blocking

19   position to knock out a competing bid, and that's an open

20   issue.  It's partly a legal question; it's partly -- well,

21   it's a legal question under the law.

22          MR. ROGAN: Well, their blocking position I

23   believe is one that needs to be addressed, no doubt by -- I

24   believe by valuation, would solve the problem, I mean of

25   whatever their claim is.

1          THE COURT: But again, why –- if we take a time

2    out to do the valuation, and there's no competing bid, we

3    really –-

4          MR. ROGAN: Well, no, I'm saying only if the

5    competing bid comes up.  A competing bid –- I guess my

6    concern is this, the competing bid by itself just creates

7    stalemate again.  It can't be –- the Debtor says, well, I

8    can't accept or I won't accept the Burlingame bid because I

9    have a competing bid.  At that point, I think the Debtor is

10   obligated, for the benefit of all of us who have an

11   interest in this case, to do something, to move forward and

12   make sure that competing bid can at least be brought to the

13   Court for, hopefully, review and approval.  But to simply

14   say I have a competing bid and I'm not going to approve the

15   first one, but I don't also take the steps that are

16   necessary to lay the ground work to get the competing bid

17   approved, that's the problem we've got.

18         THE COURT: The problem is, we're all used to a

19   stalking horse.  We're all used to sales where the Debtor

20   and the first stalking horse –-

21         MR. ROGAN: Right.

22         THE COURT:  –- are in bed together, and the

23   outlier shows up and says, hey, I'm better.  And so you

24   have a debtor really wedded to the first deal and not

25   necessarily happy with the second one.  And we've got the

1 reverse here.

2 　　　　MR. ROGAN: That's right.

3 　　　　THE COURT: We have kind of a forced situation.

4 Look, I don't know any way -- I'm open to suggestion, but I

5 almost feel we have to wait and see what happens on, is

6 there a competing bid, and is there a challenge. I mean I

7 fully expect if Nobel repeats its bid from before,

8 Burlingame will repeat its objection. But if I can decide

9 it as a legal matter, I can do it. If I say this offer

10 isn't able to compete because it can't match Burlingame's,

11 that's one thing. If it requires a factual issue, like

12 valuation, then maybe I have no choice but to continue it.

13 I mean --

14 　　　　MR. ROGAN: Yeah.

15 　　　　THE COURT: I mean tell me another way to solve

16 the problem here.

17 　　　　MR. ROGAN: I'm just suggesting that whatever

18 the -- and of course, the Court is correct, it's impossible

19 to know exactly what has to be done because we don't have a

20 competing bid, but if we do get a competing bid, what I

21 would like to see and I would hope the Debtor would agree,

22 would be that the Debtor not only -- if the Debtor chooses

23 to accept a competing bid or to negotiate to get an

24 acceptance from a competing bidder, that the Debtor also

25 realizes that more has to be done and needs to be done

1    promptly, that we have to have some way to resolve the

2    legal and factual issues that will no doubt arise from any

3    competing bid, so that we're not still here months from

4    now.

5            THE COURT: You know, all I can do, I think -- I

6    mean I think I can do this -- I suppose I can say, if the

7    Debtor files a motion for the Burlingame sale and if there

8    is a competing bid that the Debtor likes better, and if

9    there's an objection on the legitimacy or the

10   appropriateness of that competing bid, then all I can

11   possibly hope to do is, at this point is order all the

12   counsel for those parties to meet and confer prior to the

13   20th and discuss the issues that need to be addressed.  I

14   don't know what else I can do.  Anyone else have any other

15   suggestions?  Mr. Moore?

16           MR. ROGAN: That may be the best.

17           MR. MOORE: No, Your Honor, that's fine.

18           THE COURT: Mr. Bradlow?

19           MR. BRADLOW: It's a conundrum.  I don't.

20           THE COURT: Okay.  Mr. Huckins, I'm going to give

21   you a homework assignment.  I realize you're not the

22   Debtor's lawyer, but your client is a major player here.  I

23   want you to submit quickly a fairly brief written

24   scheduling order that repeats it.  So let's run through it

25   again.  The Debtor is to file a motion by February 6th to --

1 and by the way, that's prior to the time of the hearing --

2 why don't we say -- Mr. Healy, I'm going to make your life

3 a little less easy -- I'm going to say by 5:00 p.m. on

4 February 5th, and if you do that motion, then you can notify

5 counsel that we don't have to have a hearing on the morning

6 of the 6th. So the Debtor is to file a motion to approve

7 the Burlingame sale on February 5th at 5:00 p.m. or to show

8 cause that a hearing on February 6th at 10:30, why I should

9 not appoint a trustee or why I should excuse it for not

10 having filed that motion. I mean again, gentlemen, if Mr.

11 Healy, you know, is ill and missed it by a day, I'm not

12 going to punish the Debtor, and if there's another good

13 reason.

14          On the assumption that that motion is filed

15 timely, then any competing bids must be filed by February

16 10th and any objections to any bids, Burlingame or the

17 competing bid, must be filed by the 17th. If there is a

18 competing bid, and if there is an objection to the

19 competing bid, or to any bid, then the objector, the bidder

20 whose offer is objected to, the Debtor and Mr. Bradlow are

21 directed to meet and confer to discuss how they best think

22 the matters should be dealt with, whether they be legal

23 issues or factual issues, and we will have a hearing on

24 February 20th at 10:30. Preliminarily on the calendar, it

25 will be to approve the sale that is the subject of the

1    motion.  If the motion doesn't get filed, then we'll take

2    all of that up at the February 6th hearing.  Okay?  I mean

3    it's a little bit homemade, but so what.

4              MR. HUCKINS: The only other thing that I think we

5    probably need to splice in, that you alluded to in the

6    first point, is we've got a holding date for February 6th at

7    9:00 -- or at 10:30?

8              THE COURT: Yes.

9              MR. HUCKINS: Okay.

10             THE COURT: Oh, I thought I said that.  I moved up

11   the deadline so that -- just by a few yours -- so if Mr.

12   Healy or the Debtor files that motion, we don't need to

13   have the hearing on the 6th.

14             MR. HUCKINS: And avoid the hearing, OSC, why not,

15   okay.

16             THE COURT: And I'll just assume -- again, I'll

17   ask Mr. Bradlow to continue to use his good offices to

18   facilitate any interviews or exchange of information,

19   whatever.  So, Mr. Healy, you've got a few days to get back

20   to Mr. Huckins.  This doesn't have to be in an order.  It's

21   just you get back to him, and if you make a reasonable

22   request for something and he either won't or doesn't

23   respond, that might in and of itself justify excusing the

24   non-filing of the motion by the 5th.  So I'm assuming that

25   you'll get on with asking Burlingame's counsel what you

 1  need, and Burlingame's counsel will comply, and we'll take

 2  it from there.  Okay?  Have we got everything covered?

 3          MR. HEALY: Your Honor, what are you going to do

 4  as far as scheduling out the status conference on the

 5  adversary proceeding?

 6          THE COURT: Just for calendaring purposes, I'm

 7  moving it to the 20th.

 8          MR. HEALY: Okay.

 9          THE COURT: And it's just a holding.  It's not --

10  we're not going to act on it.

11          MR. HEALY: I just don't want to lose track of it.

12          THE COURT: No, no, I understand.  And I have a

13  question for Mr. Bostick.  Mr. Bostick, based upon the

14  Burlingame status conference statement, it looks to me like

15  your client is about to exit this proceeding; is that on

16  track?

17          MR. BOSTICK: That's correct, Your Honor.

18          THE COURT: Okay.  When will that be accomplished?

19          MR. BOSTICK: Well, all that is required of us has

20  been done, so we've recorded our releases, filed our

21  releases, and filed our withdrawal of claim.

22          THE COURT: Okay.

23          MR. BOSTICK: We do have a contingent interest in

24  the case because there's a contingent payment based on the

25  outcome.

1          THE COURT: Right.  I understand that.  I saw

2     that.

3          MR. BOSTICK: But for all practical purposes,

4     we're out of it at this point.

5          THE COURT: Well, you're more than welcome here.

6     I just wanted to make sure I knew what the status of things

7     was.

8          MR. BOSTICK: That's it, Your Honor.  Thank you.

9          THE COURT: Okay.  Thank you everyone.  I'll see

10    you either on the 6th or the 20th.

11         ALL COUNSEL: Thank you, Your Honor.

12       (Whereupon, the proceedings are concluded at 10:20

13    a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6                    CERTIFICATE OF TRANSCRIBER

7

8

9          I certify that the foregoing is a correct

10 transcript from the digital sound recording of the

11 proceedings in the above-entitled matter.

12

13

14 DATED: June 10, 2009

15

16                    By: /S/ Jo McCall_____

17

18

19

20

21

22

23

24

25